**In re William Thomas BILLINGS.**

**IRVING FEDERAL SAVINGS AND LOAN ASSOCIATION, Plaintiff,**

v.

**William T. BILLINGS, Defendant.**

**Bankruptcy No. 92 B 2055.
Adv. No. 92 A 0874.**

United States Bankruptcy Court,
N.D. Illinois, E.D.

Oct. 22, 1992.

432

James T. Ryan, Ryan, Nelson & McSherry, Arlington Heights, Ill., for plaintiff.

Gus A. Paloian, of Seyfarth, Shaw, Fairweather & Geraldson, Chicago, Ill., for the defendant, debtor.

## MEMORANDUM OPINION

JOHN D. SCHWARTZ, Chief Judge.

This matter comes before the court on the motion of William Thomas Billings ("Billings" or "Debtor") to dismiss as untimely the Complaint for Objection To Discharge filed by Irving Federal Savings & Loan Association ("Irving Federal") pursuant to Rule 7041 of the Federal Rules of Bankruptcy Procedure. The court has considered the following: Defendant's Motion To Dismiss, Response to Defendant's Motion To Dismiss, Reply of William T. Billings To Response of Irving Federal To Motion to Dismiss, Second Response of Irving Federal to Motion to Dismiss, Reply Memorandum of William Billings to the Second Response of Irving Federal to Motion to Dismiss, and corresponding exhibits and attachments. For the reasons stated herein, the court hereby grants Billings' motion to dismiss.

## JURISDICTION AND PROCEDURE

The court has jurisdiction to entertain this matter pursuant to 28 U.S.C. § 1334 and Local Rule 2.33 of the Northern District of Illinois referring bankruptcy cases and proceedings to this court for hearing and determination. This matter constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(J).

## FACTS AND BACKGROUND

On January 30, 1992, Billings filed a voluntary petition under Chapter 7 of the Bankruptcy Code.[1] The original deadline for objecting to the Debtor's discharge or the dischargeability of any of Billings' debts was May 5, 1992. Irving Federal is Billing's largest unsecured creditor. On April 29, 1992, Irving Federal appeared before the court to extend the date within which it might file an adversary complaint objecting to the discharge of the debtor. The court extended the date for filing objections to the dischargeability of Irving Federal's debt to May 29, 1992 to coincide with the newly revised schedule for document production. On May 27, 1992, the parties again appeared before the court on a second motion by Irving Federal to extend the date to file objections to the discharge of the debtor and dischargeability of the debt due to discovery difficulties. The court reluctantly agreed to allow Irving Federal until June 26, 1992 to file its complaint objecting to the dischargeability of Irving Federal's debt.

On June 26, 1992, Irving Federal filed its Complaint For Objecting To Discharge pursuant to § 727. Billings subsequently filed his motion to dismiss Irving Federal's complaint as untimely. In his motion, Billings contends that the court granted extensions of time solely to enable Irving Federal to file an adversary complaint under § 523, and Irving Federal was therefore bound to the original deadline of May 5, 1992 within which to file a complaint alleging grounds for denial of discharge under § 727. Irv-

ing Federal contends that although the court "misassumed" that Irving Federal would proceed under § 523, rather than § 727, the court's belief is irrelevant because the same principles would apply regardless of whether the extension of time was for a § 523 or a § 727 complaint. Irving Federal further alleges that the court used the terms "discharge" and "dischargeability" interchangeably throughout the relevant hearings and thus, because the court "unequivocally" granted extensions, Irving had until June 26, 1992 to file a complaint under either § 523 or § 727. In its Response, Irving Federal hints that even if the court did not extend the time to file a complaint under § 727, it has the equitable power to now do so. The sole issue before the court is whether Irving Federal properly followed the procedure outlined in Federal Rule of Bankruptcy Procedure 4004 [2] for obtaining an extension of time in which to file a complaint under § 727.

## DISCUSSION

I. *Discharge And Dischargeability Are Distinct Concepts Under the Bankruptcy Code And Are Not Interchangeable*

Section 727 is the "heart of the fresh start provisions of the bankruptcy law." H.R.Rep. No. 595, 95th Cong., 1st Sess., at 384–385 (1977); S.Rep. No. 989, 95th Cong., 2d Sess., at 98–99 (1978). This section compels the court to grant the debtor's discharge unless one of the enumerated conditions is satisfied. A Chapter 7 discharge relieves the debtor from all dischargeable debts and functions to enjoin actions to enforce or pursue all dischargeable claims against the debtor. If the debtor is denied a discharge for any reason, *all* claims against the debtor, regardless of their nature, will survive the bankruptcy; and, as a result, all creditors compete for the debtor's post petition assets.

---

**1.** 11 U.S.C. §§ 101–1330 (1982 & Supp.1992). All section references are to the Bankruptcy Code unless otherwise noted.

**2.** F.R.Bankr.P. 4004, 11 U.S.C. All rule references are to the Federal Rules of Bankruptcy Procedure unless otherwise noted.

Section 727 serves a policing function by ensuring that only honest debtors are permitted to take advantage of the bankruptcy laws. *Prairie Production Credit Assoc. v. Suttles (In re Suttles)*, 819 F.2d 764, 766 (7th Cir.1987) (citing *Matter of Garman*, 643 F.2d 1252, 1257 (7th Cir.1980), *cert. denied*, 450 U.S. 910, 101 S.Ct. 1347, 67 L.Ed.2d 333 (1981)). Under this section, conditions for denial of discharge include proof of the debtor's mishandling of property; failure to produce adequate books and records; commission of bankruptcy crimes; failure to explain losses; failure to obey a court order or answer questions; improper acts in another bankruptcy case; and, earlier discharge within a certain time frame. The existence of any of these circumstances would clearly prejudice the rights of all creditors. Consequently, the Code permits all creditors to allege facts sufficient to deny a debtor a discharge of all of his or her debts under § 727. The court, however, is obligated to apply this section liberally to protect the debtor. *Suttles*, 819 F.2d at 764. In this context, the Advisory Committee Notes accompanying the rules remind courts to take into account the difficulty of proving the existence or nonexistence of facts as to which evidence is likely to be more accessible to the debtor than to the objector. Thus, courts generally allow the burden to shift to the debtor once the objecting party has established the basis for the objection, *See, e.g., Meridian Bank v. Alten (In re Alten)*, 958 F.2d 1226, 1233 (3d Cir.1992).

Section 523, in contrast to § 727, assumes that the debtor is allowed a discharge and exempts from that general discharge specified debts. Section 523 provides the basis for objecting to dischargeability of specific debts, and unlike section 727, one creditor does not state another creditor's basis for objecting to dischargeability. Section 523(c)(1) reads, in part:

"... the debtor shall be discharged from a debt of the kind specified in paragraph (2), (4), and (6) of subsection (a) of this section, unless, on request of the creditor to whom such debt is owed, and after notice and a hearing, the court determines such debt to be excepted from discharge under paragraph (2), (4), or (6) ..." (emphasis added).

▮▮▮▮ The rationale for excluding certain debts from discharge is that the debtor acted in an improper manner at the time the he or she incurred the specific debt. Subsections (2), (4), and (6) focus on the debtor's prior dealings with an objecting creditor, rather than on actions which necessarily affect the rights of all creditors. In addition, § 523 exempts from discharge specified debts for policy reasons not here applicable. The standard of proof is clear. To obtain an exemption of a specific debt from a discharge under § 523, a creditor must demonstrate by a preponderance of the evidence that one of the conditions of § 523 is satisfied. See *Grogan v. Garner*, 495 U.S. 918, 110 S.Ct. 1945, 109 L.Ed.2d 308 (1990). In addition, the discharge provisions of § 523 are to be construed strictly against the creditor and liberally in favor of the debtor. *In re Pochel*, 64 B.R. 82, 84 (Bankr.C.D.Ill.1986).

Discharge and dischargeability are also governed by distinct procedural rules. Rule 4004 sets forth the procedure for granting or denying discharge under § 727. Rule 4007 governs determination of dischargeability of a debt under § 523. Both 4004(a) and 4007(c) set a strict deadline of sixty days following the first meeting of the creditors under § 341(a) by which a "party in interest" may dispute the discharge of the debtor and the dischargeability of the debts. Rules 4004(b) and 4007(c) also provide that there will be no extension of time to file a complaint unless a motion is made before the sixty day limit has expired. *See Anwiler v. Patchett (In re Anwiler)*, 958 F.2d 925, 927 (9th Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 236, 121 L.Ed.2d 171 (1992). If a motion for an extension is timely made, the court may extend the time to file a complaint under § 727 for cause. F.R.Bankr.P. 4004. Likewise, rule 4007 permits the court to extend the relevant period for cause on the motion of a party in interest during the initial 60 day period.

■ Nevertheless, these rules are not identical. "Party in interest" carries distinct meanings under 4004 and 4007. Rule 4007(a) provides that a "debtor or creditor" may file a complaint under § 523 to determine the dischargeability of specific debt. Section 727(c)(1), on the contrary, describes those who may file a complaint objecting to the debtor's discharge as the "trustee or creditor." The diverse meanings of "party in interest" again underscore the difference between discharge and dischargeability. A trustee acts for the entire creditor body and thus is not nor should he or she be concerned with the dischargeability of a specific debt. Clearly, a debtor has no rhyme or reason to object to his or her own discharge, but may well want a determination of the dischargeability of a specific debt. A creditor, such as Irving Federal, is a "party in interest" under both rules. This does not mean that a complaint or a motion to extend the time to file a complaint under § 523 to determine the dischargeability of a specific debt in accordance with rule 4007 is presumed to be a motion to extend under rule 4004.

While it is true that a creditor can move to extend the discharge date in accordance with rule 4004, or rule 4007, or both, and that the court may consider similar or even the same evidence in each scenario, discharge under § 727 and dischargeability under § 523 refer to distinct concepts and cannot be used interchangeably. Irving Federal erred when it assumed that the court granted it an extension to proceed under § 727 on April 29, 1992 merely because the court extended the time to proceed under § 523. Discharge and dischargeability are based on separate policies and are governed by distinct procedural rules.

II. *The Transcripts of The Hearings on Irving Federal's Motion to Extend the Discharge Date Are Factually Conclusive*

■ In the present case, Irving Federal filed two motions requesting this court to "extend the deadline to file a complaint objecting to discharge or to determine dischargeability of certain type of debts of the debtor." The transcripts of the related hearings unequivocally demonstrate the court's intention to grant Irving Federal an extension of time to file a complaint pursuant to § 523 objecting to the dischargeability of *its* debt. At the hearing on the creditor's first request for an extension of time to file a complaint objecting to the debtor's discharge, the court stated: "All right. Show the extension of time to file dischargeability complaints. You're not interested in discharge?" Counsel for Irving Federal replied, "No, Judge." When the court again queried whether the extension was for dischargeability, same counsel replied "Correct." Transcript, April 29, 1992, at 4.

One month later, at the hearing on Irving Federal's second motion, the court specifically ruled again:

"I will extend the time for filing objections to dischargeability of your debt, of the Irving Federal Savings & Loan Association obligations ...

Individuals who file for bankruptcy are entitled to get their discharge unless there is reason that they shouldn't. And, that is either by a dischargeability complaint under 727 or—the discharge complaint under 727 or dischargeability under 523.

Now, you are going under 523, and I will extend the time for you to do that." Transcript, May 27, 1992, at 4, 5 (emphasis added).

With these remarks, this court correctly recognized a presumption in the Code that the debtor will be granted a discharge and that all of his debts will be discharged. The court noted the two instances when this presumption will fail. First, under § 727 where the debtor acts dishonestly in connection with the bankruptcy case, then none of the debtor's obligations will be discharged. Second, if the court does grant the debtor a discharge, but a creditor or the debtor satisfies the burden of showing that discharge of a specific debt is contra the policies and language of § 523, then a specific obligation will not be discharged. Contrary to Irving Federal's as-

sertions, the court did not use § 523 and § 727 interchangeably.

### III. Statements Made By And Between The Parties Are Irrelevant To Whether Irving Federal Obtained An Extension of Time to File A Complaint Pursuant To § 727

■ In its Response to Debtor's Reply to the Motion to Dismiss, Irving Federal claims that correspondence between the Debtor and Irving Federal demonstrate that the court granted an extension of time to file a complaint under § 727, or, in the alternative, that such correspondence misled Irving Federal into believing that it had obtained an extension to file a complaint under either § 523 or § 727.. In support of this allegation, Irving Federal refers to letters dated May 15, 1992, June 16, 1992, and June 18, 1992 in which counsel for the Debtor state their opposition to extending the deadline for objecting to discharge or dischargeability of debt. Because these letters postdate the hearing on Irving Federal's first motion to extend the bar date, the court fails to understand how Irving Federal could have been misled by its correspondence with the Debtor's counsel. By this time, the court had already explicitly ruled that it would extend the discharge date to allow Irving Federal to proceed under § 523.

### IV. The Court Does Not Have Authority to Extend The Time For Filing A § 727 Complaint

The transcripts conclusively establish that the court extended the deadline for filing a § 523 complaint. Because § 523 and § 727 are not interchangeable, and the granting of additional time to pursue one does not automatically extend the time period to pursue the other, Irving Federal's complaint under § 727 is untimely. The sixty day time periods in rules 4004 and 4007 are strictly construed by the courts. As a result, nondischarge claims and certain types of nondischargeability claims are automatically cut off when this relatively short time period lapses, unless an appropriate party has secured an extension of time under rule 4004 or rule 4007. See, e.g., In re Anwiler, 958 F.2d at 927 (bar date for filing discharge motions, once set, does not change, absent motion to extend, even though conflicting notices sent when change in venue occurred); First Nat'l Bank of Deerfield v. Lewis (In re Lewis), 71 B.R. 633 (Bankr.N.D.Ill.1987) (notice issued by second bankruptcy court after change in venue did not extend time); In re Kirsch, 65 B.R. 297, 300 (Bankr.N.D.Ill. 1986) (bar date could not be extended nunc pro tunc even though docket clerk mistakenly entered an order extending time to file complaints). The result may be harsh, but Congress intended to prevent creditors from harassing debtors after their claims have been discharged in bankruptcy, and rigorous enforcement of these time limits furthers the policy underlying these Code sections.[3]

■ In its Response, Irving Federal suggests that it should be allowed to file its § 727 complaint late on grounds of excusable neglect and the court should exercise its discretion to extend the 4004(a) time period nunc pro tunc to the date Irving Federal filed its complaint. Rule 9006(b)(1) permits the court to grant an the enlargement of time where the failure of the applicant to act was the result of "excusable neglect." Under current law, however, for purposes of obtaining an extension of time to file a complaint under § 727, an applicant may no longer rely on "excusable neglect." Rule 9006(b)(1) is a general standard which applies only where more specific provisions as to enlargements of time are lacking. Rule 9006(b)(3) reads: "[t]he court may enlarge the time for taking action under Rules ... 4004(a), 4007(c) .., only to the extent and under the conditions stated in those rules." (emphasis added). This specific limitation on the court's power to grant extensions under rules 4004 and 4007 makes the general standard of subsection (1) inapplicable. In re Smolen, 48 B.R. 633, 635 (Bankr.N.D.Ill.1985); see also

---

**3.** For a more complete discussion of this policy, see Kirsch, 65 B.R. at 300. (citing Countryman, "The New Dischargeability Law," 45 Am.Bankr. L.J. 1 (1971)).

*Vaccariello v. Lagrotteria (In re Lagrotteria),* 43 B.R. 1007 (N.D.Ill.1984) ("a creditor cannot bootstrap herself by an out of time prayer for relief brought under the very rule which requires timeliness"). Thus, the Creditor's allegations that the Debtor has failed to demonstrate prejudice or explain how the administration of the case will be adversely affected are irrelevant. Even if the court wanted to extend the relevant time period, it has no discretion to do so. For the same reason, the court cannot rely on § 105 as authority in this instance to employ its equitable powers and allow Irving Federal to file its complaint at this time. Equity follows the law. See *In the Matter of Johns–Manville Corp.,* 26 B.R. 405, 415 (Bankr.S.D.N.Y. 1983), *aff'd,* 40 B.R. 219 (D.C.N.Y.1984) (quoting 2 *Collier on Bankruptcy* ¶ 105.02 (15th ed. 1982) ("§ 105 does not permit the court to ignore, supercede, suspend, or even misconstrue the statute itself or even the rules").

### V. *Irving Federal's Complaint Fails to State A Claim Under § 523*

■ Rule 7008 makes Rule 8 of the Federal Rules of Civil Procedure applicable to adversary proceedings. Under F.R.Civ.P. 8(a), a complaint must identify the basis of jurisdiction and contain a "short and plain statement of the claim showing that the pleader is entitled to relief." In *Bartholet v. Reishauer A.G. (Zurich),* 953 F.2d 1073 (7th Cir.1992), Judge Easterbrook clarified the pleading requirements of F.R.Civ.P. 8(a):

"A complaint under Rule 8 limns the claim; details of both fact and law come later, in other documents. Instead of asking whether the complaint points to the appropriate statute, a court should ask whether relief is possible under any set of facts that could be established consistent with the allegations.... [T]he complaint need not identify a legal

theory and specifying an incorrect theory is not fatal." 953 F.2d at 1078.

The rationale underlying *Bartholet* is that the opponent is on notice of the basis of the complaint even where the complainant specifies the wrong legal theory, statute, or rule. In this case, this court must dismiss Irving Federal's complaint under § 727 as untimely for the reasons stated above. Irving Federal did, however, obtain two extensions of time in compliance with Rule 4007, and could have filed a complaint pursuant to § 523 on June 26, 1992. In light of *Bartholet,* this court has considered Irving Federal's complaint to determine whether the allegations contained therein support a claim for nondischargeability of Irving Federal's debt under § 523.

The following allegations form the basis of Irving Federal's Complaint: (1) that during the year prior to the filing of the petition, Billings transferred property from himself to his wife and daughter with the intent to hinder, delay and defraud Irving Federal; (2) that Billings knowingly and fraudulently failed to list certain interests on his bankruptcy petition; (3) that Billings has testified falsely under oath during the bankruptcy proceedings; and, (4) that during this case, Billings has concealed or failed to preserve record information necessary to ascertaining his financial condition. Because Irving Federal's claim arises from a judgment it obtained after a lengthy trial, subsections (2), (4), and (6) are the only conceivable avenues through which Irving Federal might obtain an exception to the discharge of debt.

■ Section 523(a)(2) exempts debts for money, property, services or an extension, refinancing or renewal of credit claim to the extent such debts were *obtained by* false pretenses, a false representation or actual fraud, other than a statements representing the debtor's financial condition. Irving Federal's allegations do not support a claim under this section.[4] Section

---

**4.** Irving Federal may be attempting to allege fraud. To sustain a prima facie case for fraud, a creditor generally must establish: (1) that the debtor made a representation at a time the debtor knew the representation to be false; (2)

that the debtor made the representation with the intent to deceive creditor; (3) the creditor reasonably relied on the debtor's representation to his detriment at the time the debt arose. *In re Krause,* 44 B.R. 159, 161 (Bankr.N.D.Ill.1984).

523(a)(4) provides an exception to discharge of a debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." Irving Federal did not plead sufficient facts to support a claim under this subsection.[5] Paragraph (6) of § 532 exempts from discharge debts for willful and malicious injury by the debtor to another person or the property of another person. This requires evidence of an act by Billings which was both malicious and willful, and which resulted in injury to Irving Federal.[6] Irving Federal does not allege that Billings knowingly took steps that directly harmed Irving Federal's interest.

Irving Federal's allegations instead focus on the Debtor's conduct in connection with this case. In sum, Irving Federal failed to allege any facts which, if proven, would provide adequate basis for a nondischargeability claim under § 523(a)(2), (a)(4), or (a)(6). Thus, even assuming Irving Federal had filed its complaint pursuant to § 523, this court would dismiss it pursuant to Rule 12(b)(6), incorporated by reference in Rule 7012, for failure to state a claim upon which relief can be granted.

## CONCLUSION

Irving Federal failed on April 29, 1992 to extend the May 5, 1992 date for filing an adversary complaint to block the discharge of the debtor. The complaint filed on June 26, 1992 is untimely and must be stricken. Further, this court has examined the complaint to determine if any possible theory for relief exists on it under § 523. None does. The Debtor's motion to dismiss Irving Federal's Complaint For Objection To Discharge will be granted by separate order.

---

**5.** To hold the debt of a "fiduciary" nondischargeable under § 523(a)(4), the creditor must show: (1) that an express trust was created; (2) that the debt was caused by fraud or defalcation; (3) that the debtor acted as a fiduciary to the creditor at the time the debt was created. *Klingman v. Levinson,* 831 F.2d 1292, 1295 (7th Cir.1987).

**6.** See *In re Scarlata,* 112 B.R. 279, 289 (Bankr. N.D.Ill.1990) ("nature of the injury, independent from the act causing it, cannot be the basis for making a determination of when a 'willful and malicious injury' has occurred").