114 F.3d 1191
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
LINCOLN NATIONAL LIFE INSURANCE COMPANY, an Indiana
corporation in its individual capacity and as assignee of
the Santa Fe Private Equity Fund II, L.P., a New Mexico
limited partnership, Plaintiff-Appellee,
v.
A. David SILVER and Ads Partners, L.P., a New Mexico limited
partnership, Defendants-Appellants.
 No. 96-3068.
 United States Court of Appeals, Seventh Circuit.
 Argued April 25, 1997.
Decided May 15, 1997.
Rehearing and Suggestion for Rehearing En Banc Denied June 9, 1997.
 
 Before POSNER, Chief Judge, and CUMMINGS, and FLAUM, Circuit Judges.
 
 ORDER
 
 1
 In August 1988, the Lincoln National Insurance Company ("Lincoln") filed a second amended complaint against seven defendants. Lincoln, an Indiana corporation with its principal place of business located in Fort Wayne, Indiana, brought its suit in both its individual capacity and as assignee of Santa Fe Private Equity Fund, L.P. II (SFPEF II), which was a New Mexico limited partnership organized to invest in existing and newly formed health care ventures.[1]
 
 The defendants were:
 
 2
 1. ADS Partners, L.P. (ADSP), also a New Mexico limited partnership which was the general partner of SFPEF II until February 1987. In February 1988, it filed a bankruptcy petition in the United States Bankruptcy Court for the District of New Mexico;
 
 
 3
 2. A. David Silver, the managing general partner of ADSP and a related entity, ADS Associates (ADSA). He resides in Santa Fe, New Mexico. In February 1987, ADSP was removed as general partner of SFPEF II by the limited partners and John Clark was appointed receiver for SFPEF II;
 
 
 4
 3. Arthur Young & Co., which was a Certified Public Accounting partnership with its principal office in New York City. It acted as auditor for Santa Fe Private Equity Fund I, Avantgarde Publishing Corporation/Family Achievement Software Corporation, SFPEF II, ADSP and ADSA. It allegedly advised Silver and ADSP in organizing SFPEF II and assisted Silver and ADSP in promoting SFPEF II to potential investors;
 
 
 5
 4. Philip J. DeWald of Albuquerque, New Mexico, who was in charge of auditing SFPEF II's account;
 
 
 6
 5. Al Boos, a resident of Phoenix, Arizona, who was managing partner of Arthur Young's Albuquerque office and principal on the SFPEF II and ADSP accounts;
 
 
 7
 6. Reta Jones of Albuquerque, New Mexico, who was a senior manager at Arthur Young and responsible for supervising the audit of SFPEF II; and
 
 
 8
 7. Kirk Meyer of Albuquerque, New Mexico, who was also employed by Arthur Young and assigned to the audit of SFPEF II and assisted in preparing its annual report.
 
 
 9
 Eventually all defendants named in the second amended complaint were dismissed except Silver and ADS Partners, Ltd., the managing general partner of SFPEF II.
 
 
 10
 Lincoln's second amended complaint was in 23 counts, only twelve of which were tried to the district court. They may be summarized as follows:
 
 
 11
 In Count I Lincoln, individually, claimed that defendants violated Section 12(2) of the Securities Act of 1933.
 
 
 12
 In Count III Lincoln, individually, claimed that defendants violated Section 10(b) of the Securities Exchange Act of 1934.
 
 
 13
 In Count IV Lincoln, individually, claimed that defendants violated Section 5/12 of the Illinois Securities Law of 1953.
 
 
 14
 In Counts VI and VII Lincoln, individually and as SFPEF II's assignee, claimed that defendants breached fiduciary duties owed under New Mexico Stats. Ann. §§ 54-2-9 and 54-1-21(A) (1978).
 
 
 15
 In Counts VIII, IX and X Lincoln, individually, claimed that Silver violated Sections 1962(a), 1962(b) and 1962(c) of the Racketeering Influenced and Corrupt Organizations Act (RICO). 18 U.S.C. §§ 1961 et seq.
 
 
 16
 In Counts XI, XII and XIII Lincoln repeated its claims as assignee of SFPEF II, claiming that Silver violated 18 U.S.C. §§ 1962(a), 1962(b) and 1962(c).
 
 
 17
 In Count XXI, Lincoln, individually, claimed that Silver engaged in common law fraud.
 
 
 18
 On September 29, 1995, Judge Nordberg handed down an 80-page Memorandum Opinion and Order. The court found for plaintiff and against the defendants on all twelve counts and awarded plaintiff $22,903,788 in damages (representing actual damages of $7,134,556 trebled plus $1,500,000 in punitive damages). The court also held that Lincoln was entitled to reasonable costs and attorney's fees. Final judgment was entered against Silver, including plaintiff's attorney's fees and costs, in the amount of $24,173,864.98 (App. 3).
 
 
 19
 For the reasons given in the attached Memorandum Opinion and Order of the district court, the judgment is affirmed on the merits. However, Silver's briefs raise six points that will be discussed here.
 
 
 20
 1. Rescheduling of trial date. Silver contends that the district court should have rescheduled the trial date. However, Judge Nordberg scheduled the trial six months in advance. By then the case had been more than six years old, discovery was closed and the parties had engaged in trial preparations. Moreover, Silver acknowledges that the docket shows that the Clerk of Court mailed notices of the trial date to him on January 26, 1993, thus satisfying Rule 77(c) of the Rules of Civil Procedure. In any event, he concedes that he knew of the trial date more than a month in advance, during which he could have scheduled witnesses. Also, Judge Nordberg continued the close of the trial for a month to accommodate Silver. Silver also complains that further rescheduling was needed to accommodate his plan to use Philip J. DeWald as a witness. DeWald lived and worked in New Mexico and was beyond the subpoena power of the court under Federal Rule of Civil Procedure 45(a)(2) and (b)(2) and Silver eventually informed the court that he would not attempt to call him as a witness. However, during the second week of the trial Silver requested a continuance until the end of September because of a business crisis of DeWald. Accordingly the court accommodated plaintiff by scheduling an additional trial date for September 30, 1993. On that date Silver told the district judge that DeWald could not make it on that date and instead submitted portions of DeWald's deposition and told the court that he was resting his case in chief without calling any further witness. Consequently there was no prejudice to Silver in the denial of a continuance.
 
 
 21
 2. Defendant contends that he should have been granted a jury trial. As explained below, Silver's jury demand in the proceedings below was untimely and properly denied.
 
 
 22
 A brief chronology of events is helpful to understanding the jury-demand issue. Lincoln filed this action on September 23, 1986. An amended complaint was filed six days later on September 29, 1986. On December 1, 1986, Silver and ADSP filed an answer to all counts of the amended complaint except count IV (alleging violation of Illinois securities law), which Silver sought to dismiss on statute of limitations grounds. Defendants' answer did not contain a jury demand. On May 21, 1987, after the district court denied defendants' motion to dismiss count IV, Silver filed his answer to that count. The answer contained no jury demand. On June 1, 1987, Silver filed a counterclaim, containing a jury demand, against Lincoln, alleging breach of contract, inducement of breach of contract, business libel, and disparagement. On August 23, 1988, Lincoln filed a second amended complaint. Silver answered the complaint on October 24, 1988, and the answer did not contain a jury demand. As noted above, the case ultimately proceeded to trial on 12 counts of the 23-count second amended complaint. Approximately 10 months before trial--six years after the case was filed and after the close of discovery--Silver submitted papers to the district court requesting a jury trial. The court treated Silver's submissions as a motion for jury trial, and denied the motion.
 
 
 23
 Silver's argument on appeal that he was improperly denied a jury is predicated on the jury demand contained in his counterclaim filed on June 1, 1987. That jury demand, however, must be deemed effective only as to the issues raised in his counterclaim, not the issues raised in plaintiff's complaint and joined 6 months earlier by Silver's answer thereto. Count IV of plaintiff's amended complaint alleged a cause of action under the Illinois Securities Act of 1953. 815 ILCS 5/2.1 et seq. Other than invoking the Illinois Securities Act as the basis for the count, the allegations of count IV raised no new issues that were not already alleged in the remainder of plaintiff's complaint and fully answered. In particular, the core allegations of count IV--namely, that Silver met with plaintiff's representative in June 1985 for the purpose of inducing Lincoln's participation in the SFPEF II partnership; that Silver made false representations concerning the nature of the investments in which SFPEF II would invest; and that as a direct and proximate result of Silver's misrepresentations plaintiff invested in SFPEF II and sustained damages in excess of $900,000--are all contained in count III of the amended complaint, which alleged a securities fraud claim under Section 10(b) of the Securities Exchange Act of 1934, and which was answered by Silver on December 1, 1986.
 
 
 24
 As this Court has observed on many occasions, the Rules of Civil Procedure do not require plaintiffs to separately denominate counts in their complaints, with each such count corresponding to a particular statute or legal theory. See, e.g., Bartholet v. Reishauer A.G. (Zurich), 953 F.2d 1073, 1077 (7th Cir.1992). Here the fact that Silver did not specifically answer the particular allegations contained in a separately denominated count (count IV) until six months after he had answered materially identical allegations was entirely an incidental consequence of the manner in which Lincoln structured its complaint. Thus if Lincoln had simply set forth all of its factual allegations and concluded with an appropriate prayer for relief, Silver would have answered all such allegations and concluded with an appropriate prayer for relief, Silver would have answered all such allegations and this artificial splitting of the answer would never have occurred. (Furthermore, although courts, including our own, commonly entertain statute of limitations defenses that have been submitted under the guise of a "motion to dismiss," such defenses are technically affirmative defenses under Fed.R.Civ.P. 8(c); and, the pleading of an affirmative defense does not relieve a defendant from the obligation of answering the allegations of the complaint. Thus, had Silver pursued his affirmative defense in accordance with the Rules, he would have answered the allegations of count IV.) On the unique facts presented by this case, we conclude that all issues raised in Lincoln's complaint were joined by Silver's December 1, 1986, answer. Therefore, the jury demand contained in his counterclaim, filed six months later, was untimely as to those issues and was properly denied.
 
 
 25
 Silver relies heavily on the proposition that a general jury demand must be construed as a jury demand as to all issues triable by a jury. As a general matter, he is quite correct in this statement of the law. Indeed, Rule 38(c) expressly provides that "In the demand a party may specify the issues which the party wishes so tried; otherwise the party shall be deemed to have demanded trial by jury for all the issues so triable." Had Silver's June 1, 1987, jury demand been timely, the Rule would plainly have had some effect; however, there is no authority for the proposition that an untimely jury demand constitutes a valid jury demand for all issues so triable including those for which the right to a jury trial has been waived by virtue of the defendant's failure to timely demand such a trial. We have carefully reviewed all of the decisions cited by Silver in this regard and find no support in any of them for Silver's expansive application of the general rule.
 
 
 26
 In addition to the jury demand contained in his counterclaim, Silver also moved the district court for a jury trial in late 1992, six years after the case had been filed. In denying Silver's belated motion, Judge Nordberg remarked that a bench trial was an advantage to defendant--who, at this late date was proceeding pro se in the district court[2]--because he would then "be able to get all the evidence in that is relevant and should get in." (Def.'s App. 1, p. 14). Judge Nordberg also noted that a bench trial would be advantageous for Silver because "if, in good faith, a particular witness for the defendant is not able to be present during the time period that we have set, because it is a bench trial, we will be able to continue the hearing for a short period of time to permit the defendant to complete the presentation of his case." Id. It is plain that Judge Nordberg did not abuse his discretion in denying Silver's untimely request and that Silver suffered no prejudice from that denial.
 
 
 27
 3. Statute of limitations defense. Silver faults the district court for not discussing whether Lincoln's Rule 10b-5 and RICO claims are barred by the statute of limitations. However, at trial Silver introduced no evidence in support of the statute of limitations defense or explained its basis. It was not mentioned in his opening statement, closing argument, motion for directed verdict, proposed findings of fact or motion for new trial. Consequently the argument was waived. Libertyville Datsun Sales, Inc. v. Nissan Motor Corp., 776 F.2d 735, 737 (7th Cir.1985); In re Pan American World Airways, Inc., 905 F.2d 1457, 1462 (11th Cir.1990). Lincoln invested in SFPEF II on August 1, 1985, and filed suit a little more than a year later on September 23, 1986. A Rule 10b-5 claim must be filed within one year from the date that the plaintiff knew or should have known of the fraud or no more than three years after the sale. Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson, 501 U.S. 350, 362. The statute of limitations runs when the victim becomes aware of facts that would have led a reasonable person to investigate whether he might have a claim. Tregenza v. Great Am. Communications Co., 12 F.3d 717, 722 (7th Cir.1993), certiorari denied, 511 U.S. 1085. The testimony was that Lincoln first learned about Silver's fraudulent activities through a letter of February 15, 1986 (Tr. 137-143). Any statute of limitations defense was doomed to failure. Since no facts were introduced at trial to support a statute of limitations defense as to Lincoln's Rule 10b-5 claim, it is barred.
 
 
 28
 Silver's contention that Lincoln's RICO claims are barred by the statute of limitations was waived because it was not raised in his answer or before the district court. Johnson v. Sutherland, 922 F.2d 346, 355 (7th Cir.1990). In any event Lincoln's RICO claims were not filed until its second amended complaint of August 23, 1988, well within the four-year statute of limitations. Agency Holding Corp. v. Malley-Duff & Assocs., Inc., 483 U.S. 143, 156.
 
 
 29
 4. Denial of Silver's motion in limine. Silver contends that Judge Nordberg did not rule on his motion in limine to bar the deposition testimony of Messrs. Stoefen, Ray and Mills. However, the motion was orally denied, causing Silver to file a written objection. The court twice explained that the motion was denied, causing Silver to designate portions of the deposition transcripts of these witnesses. In addition, Silver's motion in limine came six months after the November 30, 1992, due date set by the magistrate judge. Therefore the motion in limine was untimely.
 
 
 30
 5. Ernst & Young settlement agreement. Silver claims that the district court should have ordered production at trial of the Ernst & Young settlement agreement with Lincoln and should have trebled the amount before offsetting the settlement from the judgment against Silver. However, Lincoln did file the settlement agreement under seal as directed by the court and it was reviewed by Silver.
 
 
 31
 If the district court trebled the settlement amount before deducting it from plaintiff's damages, Lincoln would not have fully recovered all its damages and Silver would have received a windfall. Instead the district court properly refused to treble the settlement amount before deducting it from Lincoln's damages. Liquid Air Corp. v. Rogers, 834 F.2d 1297, 1310 (7th Cir.1987), certiorari denied, 492 U.S. 917. Moreover, the issue was waived because not raised below. Libertyville Datsun Sales, Inc. v. Nissan Motor Corp., 776 F.2d 735, 737 (7th Cir.1987).
 
 
 32
 6. Miscellany. Silver asserts that the district court failed to order Lincoln to produce all Berk's diary notes. However, Lincoln did produce all non-privileged pages of those notes and plaintiff failed to request the privileged pages.
 
 
 33
 Silver also asserts that the district court abused its discretion in admitting the deposition testimony of William Enloe. This supposedly violated the court's following rule:
 
 
 34
 We do prohibit witnesses that are to be substantive witnesses from appearing in court prior to their testimony.
 
 
 35
 However, the court found that the order had not been violated because Enloe was a rebuttal witness and did not sit through the trial, so that its sequestration order had not been violated. Even if there had been a violation, admission of Enloe's testimony would have been proper. Burks v. Oklahoma Pub. Co., 81 F.3d 975, 980 (10th Cir.1996), certiorari denied, 117 S.Ct. 302. In addition, Silver did not request exclusion of Enloe's testimony nor assert that he was prejudiced by Enloe's knowledge of Silver's testimony.
 
 
 36
 We have considered numerous other alleged legal and factual errors made by the trial court and deem them meritless. Consequently the judgment is affirmed.[3]
 
 
 
 [1]
 SFPEF II was named as a defendant in Lincoln's original complaint and amended complaint. After SFPEF II was placed in receivership, its receiver assigned to Lincoln all of SFPEF II's claims against Silver and other defendants. Lincoln subsequently amended its amended complaint, dropping SFPEF II as a defendant and asserting claims both individually and as assignee of SFPEF II
 
 
 [2]
 Silver had been represented by well-known and able counsel for four years, but they never made a jury demand in any answer to plaintiff's complaint or amended complaints, and never requested a jury trial under Rule 39(b) of the Federal Rules of Civil Procedure
 
 
 [3]
 Plaintiff's motion to strike portions of defendant's brief and appendices is denied