John HARDING, Plaintiff,

v.

DUQUESNE LIGHT COMPANY, Defendant.

Civ. A. No. 93–1822.

United States District Court,
W.D. Pennsylvania.

Jan. 18, 1995.

**424**

John A. Lee, Pittsburgh, PA, for plaintiff.

Elizabeth A. Malloy, Thomas S. Giotto, Klett, Lieber, Rooney & Schorling, Pittsburgh, PA, for defendant.

## OPINION AND ORDER OF COURT

AMBROSE, District Judge.

Plaintiff John Harding ("Harding") filed this action against his former employer, Duquesne Light Co. ("Duquesne Light" or "Company"), seeking to recover severance pay and certain other employee benefits that were denied to him when he was discharged from his employment after testing positive for marijuana in a random drug test. Pending before the Court are cross-motions for summary judgment. For the following reasons, the motion filed by Duquesne Light will be granted. The motion filed by Harding will be denied, but Harding will be allowed to amend his Complaint to assert a cause of action under section 502(a)(1)(B) of the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(1)(B).

### I. *BACKGROUND AND PROCEDURAL HISTORY.*

The following facts are undisputed. Harding was a Senior Engineer working in the Nuclear Division at Duquesne Light's nuclear power plant located in Shippingport, Pennsylvania. (Harding Dep. at 24–25.) He had been employed by the Company since January 1982 and had never had any discipline problems noted in his file.

Duquesne Light's nuclear operations are governed by regulations issued by the Federal Nuclear Regulatory Commission. *See* 10 C.F.R. Part 26. These regulations mandate that an employer establish a drug and alcohol testing program and set forth minimum actions to be taken by the employer if an employee is found to have used a proscribed substance. *Id.* §§ 26.24(b) and 26.27. In accordance with the federal regulations, Duquesne Light implemented a written "Fitness–For–Duty" program entitled Nuclear Group Directive 45 ("NGD 45") that sets forth both the Company's policy regarding illegal drug use as well as its guidelines for alcohol and drug testing. (Exh. C to Def. Mot. for Summ. Judg. at V.) According to NGD 45, all Duquesne Light employees were required "to abstain from the use, sale or possession of illegal drugs at all times." (*Id.* at 34.) NGD 45 states that employees who possess or use drugs off the job may be

subject to "disciplinary action up to and including discharge and immediate withdrawal of unescorted access authorization." (*Id.* at 37.)

Duquesne Light also provided its employees with access to a confidential Employee Assistance Program ("EAP") as a source of assistance to those employees who were experiencing problems such as alcoholism and drug addiction that could potentially jeopardize the operation of the plant and affect employee morale. Employees were encouraged by the Company president to refer themselves to EAP if they felt they needed assistance. (Def. Exh. N.) Employees were also provided extensive training regarding NGD 45 and the federal guidelines regarding illegal drug usage, and Harding does not dispute that use of drugs off the job constituted a violation of Company policies.

Nonetheless, Harding concedes that he used marijuana a total of 12 times over the Christmas holidays in 1992, with his last usage during that time period occurring on December 31, 1992. (Harding Dep. at 83–84.) Harding also placed a call to the EAP on December 31 to report a problem with alcohol.[1] Harding spoke with an EAP staff person and set up an appointment for 10:30 a.m. on January 7, 1993, for an initial consultation and assessment.

Several days after he called the EAP, on the morning of January 7, Harding's supervisor advised him that he had been selected for random drug testing and that he was to report to the Company's medical personnel to present a urine sample for testing. (Harding Aff. ¶ 5.) Harding confessed to his supervisor that he had used marijuana several days earlier and that he was concerned that the test results would be positive. (Harding Aff. ¶ 6.) Harding also told his supervisor that he had begun participation in EAP and that he had a scheduled appointment with EAP later that morning. (Harding Aff. ¶ 6.) His supervisor advised Harding that, notwithstanding his EAP appointment, he

was required to present himself for drug testing but that he could try to keep his appointment with EAP after the drug test was complete. (Harding Dep. at 76.) Harding did report for drug testing but was unable to keep his appointment with EAP and subsequently rescheduled it. (Harding Aff. ¶ 8.) Harding's urine sample did in fact test positive for marijuana. (Harding Dep. at 100.) Harding was immediately suspended and ultimately discharged "for violating Nuclear Directive 45" on the basis of his positive drug test. (Def. Exh. O.)

After he was terminated, Harding attempted to collect employee benefits he claimed were owed to him under Company policies. These benefits included severance pay and outpatient services, which Harding claimed were due him under the Company's Severance Allowance Policy; payment for 13 days of vacation earned but unused in 1992 and 1993; and payment for exercise of his Stock Appreciation Rights, which he claimed was owed to him pursuant to the Company's Long Term Incentive Policy.[2] Duquesne Light denied Harding's request for these benefits on the basis that Harding's termination for violation of NGD 45 by testing positive to marijuana rendered him ineligible under the relevant policies to collect these benefits.

Harding initiated this action by filing a Complaint in the Court of Common Pleas of Allegheny County, Pennsylvania, seeking to recover the severance pay, as well as payment for the value of outpatient services, unused vacation and the stock appreciation rights. The Complaint alleged that Duquesne Light breached its employment contract with Harding when it denied him these benefits. Harding brought these claims pursuant to the Pennsylvania Wage Payment Collection Law ("WPCL"), 43 P.S. §§ 260.1–260.45.

██ Duquesne Light subsequently removed the action to this Court on the

---

1. Harding did not report a drug abuse problem during this initial telephone call. He stated he was reluctant to mention his drug problem because he was concerned with confidentiality. (Harding Dep. at 81.)

2. A stock appreciation right ("SAR") is the right to receive any increase in market value of Duquesne Light Company common stock between the date the SAR was granted and the date the SAR is exercised. (Def. Exh. T.)

grounds that Harding's claim for severance pay was a suit to recover from an employee welfare benefit plan pursuant to ERISA.[3] Removal was thus based on this Court's original jurisdiction under 28 U.S.C. § 1331 on the severance pay claim and on this Court's supplemental jurisdiction under 28 U.S.C. § 1367 on the claims for vacation pay and stock appreciation rights.

One more procedural aspect of this case should be noted. Although the Complaint purported to raise only state law claims, Paragraph 20 of the Complaint also alleged that Duquesne Light's termination of his employment "violated public policy, specifically Section 503 of the federal Rehabilitation Act of 1973, the PA Human Relations Act, City of Pittsburgh Code (Ch. 659.02) and the Americans with Disabilities Act of 1990." (Compl. ¶ 20.) Duquesne Light interpreted this paragraph as stating a common law claim for wrongful discharge and moved to dismiss the claim. Based in part on Harding's representations to the Court that he was seeking only his contractual rights to the employee benefits at issue, the Court held that Harding had not stated a claim for wrongful discharge. *See* Order dated March 2, 1994. This lawsuit, therefore, does not address whether Harding was wrongfully discharged under federal or state law when he was fired because of a first positive drug test after he allegedly began participating in the EAP. The central issue in this lawsuit is whether Harding was contractually entitled to certain employee benefits upon his termination.

## II. *LEGAL STANDARD.*

■ Summary judgment may only be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ. Proc. 56(c). The Court, after adequate time for discovery and upon motion of a party, must grant summary judgment against the party who fails to make a showing sufficient

to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

■ In considering a motion for summary judgment, this Court must examine the facts in a light most favorable to the party opposing the motion. *International Raw Materials, Ltd. v. Stauffer Chemical Co.,* 898 F.2d 946, 949 (3d Cir.1990). The burden is on the moving party to demonstrate that the evidence creates no genuine issue of material fact, and an issue is "genuine" only if the evidence is such that a reasonable jury could return a verdict in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986). To defeat a motion for summary judgment, the non-moving party may not rest upon the mere allegations of the pleadings but must go beyond the pleadings and demonstrate that sufficient evidence exists to create a genuine issue for trial. *Carlson v. Arnot–Ogden Memorial Hosp.,* 918 F.2d 411, 413 (3d Cir.1990); *see also* Fed.R.Civ.Proc. 56(e).

## III. *DISCUSSION.*

Duquesne Light argues that summary judgment is appropriate here because Harding's state law claims for severance pay and outpatient services are preempted by ERISA, and also because Harding has failed to present evidence creating a genuine issue of material fact that Duquesne Light breached a contractual obligation to pay Harding unused vacation and stock appreciation rights upon his discharge. We agree.

### A. *Preemption.*

■ ERISA provides a cause of action under federal law to any participant or beneficiary of a benefit plant to recover benefits due under the plan, if the plan falls within the scope of the statute. 29 U.S.C. § 1132(a)(1)(B). The statute covers two types of plans: pension plans, 29 U.S.C. § 1002(2)(A), and welfare plans, 29 U.S.C.

---

**3.** Such a claim, even though purporting to be a state claim only, is one that is "necessarily federal in character" and so falls under this Court's original jurisdiction. *See Metropolitan Life Insurance Co. v. Taylor,* 481 U.S. 58, 67, 107 S.Ct. 1542, 1548, 95 L.Ed.2d 55 (1987).

§ 1002(1). Welfare plans include any "plan, fund or program" established or maintained by an employer for the purpose of providing certain benefits to its employees or their beneficiaries. Benefit plans providing severance pay are considered welfare plans covered by ERISA, even if unfunded and paid for out of the employer's general assets. *See Massachusetts v. Morash,* 490 U.S. 107, 116, 109 S.Ct. 1668, 1673, 104 L.Ed.2d 98 (1989); *see also Henglein v. Informal Plan for Plant Shut Down Benefits,* 974 F.2d 391 (3d Cir. 1992); *Deibler v. United Food and Commercial Workers' Local Union 23,* 973 F.2d 206 (3d Cir.1992). The severance pay policy at issue in this dispute is therefore an employee welfare benefit plan covered by ERISA.

■■■ ERISA preempts any state laws that "relate to" an employee benefit plan covered by ERISA. 29 U.S.C. § 1144(a). Courts have broadly construed the term "relate to", and consequently any state law that "has a connection with or reference to" an ERISA employee benefit plan will be preempted by ERISA. *Metropolitan Life Ins. Co. v. Com. of Massachusetts,* 471 U.S. 724, 739, 105 S.Ct. 2380, 2388–89, 85 L.Ed.2d 728 (1985) (quoting *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 97, 103 S.Ct. 2890, 2900, 77 L.Ed.2d 490 (1983)). An employee's state law claims for breach of a severance pay agreement have been held to be preempted by ERISA. *See Pane v. RCA Corp.,* 868 F.2d 631, 635 (3d Cir.1989) (state common law claims arising out of employer's refusal to award severance pay preempted by ERISA); *cf. Jones v. Baskin Flaherty Elliott & Mannino, P.C.,* 788 F.Supp. 878, 879 (W.D.Pa.1992) (claims brought under the WPCL for employee benefits owed under a plan covered by ERISA are preempted). Because Harding's claims pursuant to the WPCL seek recovery for severance pay allegedly owed him under the terms of Duquesne Light's Severance Allowance Policy, we find that claim is one that "relates to" an ERISA employee benefit plan and is therefore preempted by ERISA.

Harding's only response to the preemption issue consists of the following:

ERISA would pre-empt a common-law contract analysis of Duquesne's Separation Allowance Policy only to the extent of a conflict with ERISA federal law. Defendant has not even suggested that any conflict exists.

(Pl. Resp. Br. in Supp. of Mot. Summ. Judg. at 12.) Harding does not provide any authority for this position and quite simply misstates the law. As discussed above, ERISA preempts any state law "relating to" an employee benefit plan, regardless of conflict. Given the plain language of the statute and the relevant case law giving the term "relate to" expansive breadth, Harding's interpretation of ERISA preemption law is clearly incorrect. The ERISA preemption provision "was intended to displace all state laws that fall within its sphere, even including state laws that are consistent with ERISA's substantive requirements." *Metropolitan Life,* 471 U.S. at 739, 105 S.Ct. at 2389. Summary judgment will accordingly be granted on Harding's claims for severance pay and outpatient services brought pursuant to the WPCL.

**B.** *Claim for Vacation Pay and Stock Appreciation Rights.*

■■■ Harding alleges that Duquesne Light failed to pay him for approximately three weeks of accrued but unpaid vacation time and for stock appreciation rights owed him upon his discharge, pursuant to the WPCL. The statute reads in pertinent part:

Whenever an employer separates an employee from the payroll, or whenever an employee quits or resigns his employment, the wages or compensation earned shall become due and payable not later than the next regular payday of his employer on which such wages would otherwise be due and payable.

43 P.S. § 260.45. Under the WPCL, "wages" are defined to specifically include vacation pay, *see* 43 P.S. § 260.2a, and neither party disputes that SARs are also "wages" under the WPCL.

■■■ The WPCL does not create a statutory right to wages; rather, "it provides a statutory remedy when the employer breaches a contractual right to earned wages." *Doe v. Kohn Nast & Graf, P.C.,* 862 F.Supp. 1310, 1325 (E.D.Pa.1994). It is the employment

agreement between the parties that controls in determining whether earned wages are due. *Weldon v. Kraft, Inc.,* 896 F.2d 793, 801 (3d Cir.1990).

Duquesne Light argues that the evidence fails to show a contractual obligation to pay vacation benefits to Harding upon his termination. Duquesne Light has a written "Vacation Policy," geared on its face towards "provid[ing] paid vacation time for eligible employees." (Exhibit R to Def. Mot. Summ. Judg. at 215.01.) The written policy specifies four situations in which an employee is entitled to payment for unused but accrued vacation time, including resignation upon reasonable notice, retirement, death and disability. (Id. at 215.02–03.) The written policy is silent, however, on whether an employee who is fired is entitled to a vacation allowance.

Duquesne Light has pointed to evidence that the vacation policy does not provide for a vacation allowance to discharged employees and that the company's practice has always been consistent with that policy. (*See* Edwards Dep. at 232; Maurer Aff. ¶ 5.) In fact, Harding himself testified during his deposition that he had never seen a company policy that set forth a discharged employee's entitlement to vacation pay, and he also testified that no one at Duquesne Light had advised him he would be entitled to such pay if he were discharged. (*See* Harding Dep. at 130.)

■ The only evidence Harding offers in response is a statement taken out of context from the deposition testimony of Eugene Edwards, a Duquesne Light executive. Harding argues that Edwards was " 'not sure' whether its Vacation Policy denied vacation pay to employees who are discharged." (*See* Pl. Resp. Br. in Supp. of Mot. for Summ. Judg. at 12.) A review of Edwards' deposition testimony reveals, however, that Harding has slightly misconstrued Edwards' testimony. Edwards unequivocally states that "[p]eople who are discharged do not get vacation pay or vacations converted into pay." (Edwards Dep. at 232, lines 18–19.) What Edwards is "not sure" about is whether the written Vacation Policy *sets forth* the Company's position as stated by Edwards. (Id. at lines 20–21.) It is already clear that the

Vacation Policy is silent on the issue of a discharged employee's entitlement to vacation pay, and Harding has not presented any other evidence to rebut Duquesne Light's position. In light of Edwards' clear statement that discharged employees do not receive vacation pay, the company's consistent practice of denying vacation pay to discharged employees, Harding's own testimony that he had never received any indication from the company that a discharged employee was entitled to vacation pay, and Harding's failure to present any evidence at all regarding a contractual entitlement to vacation pay, Harding's position is untenable.

■ Harding's argument that he should be granted vacation pay benefits because he was wrongfully discharged is also unavailing. As Duquesne Light correctly points out, this action is not an action for wrongful discharge but one for breach of a contractual entitlement to vacation pay and other employee benefits under the WPCL. The issue here is whether Harding's employment agreement with Duquesne Light provides for the payment of unpaid vacation upon an employee's termination, and we find that Harding has not sustained his burden of showing that a genuine issue of fact exists on this issue. We will accordingly grant summary judgment in favor of Duquesne Light on that claim.

As to the claim that Harding was entitled to exercise his stock appreciation rights ("SARs") upon his discharge, Harding's only argument is that "Harding is also entitled to his stock rights because the termination was contrary to Company policies." (Pl. Resp. Br. in Supp. of Mot. For Summ. Judg. at 14.) We reiterate that this action is not about whether Duquesne Light violated its own policies or federal or state law in firing Harding on the basis of a single positive drug test despite Harding's participation in the EAP. The issue here is whether Harding was contractually entitled to receive SARs after he was terminated for violating NGD 45. Harding fails to point to any evidence creating a genuine issue of material fact that he was contractually entitled to SARs upon his discharge.

█ Harding does not dispute that his right to SARs are controlled by the company's Long Term Incentive Plan ("Plan"). A booklet provided to Duquesne Light employees, "Facts About Duquesne Light Company Long Term Incentive Plan", clearly states that if an employee is terminated for any reason other than death, disability, retirement and voluntary termination of employment with consent, then the employee immediately forfeits all unexercised SARs. (Exh. T. to Def. Mot. at 3.) Harding does allege in the Complaint that he was discharged because of his "disability" and he is therefore entitled to exercise his SARs. (Complaint ¶ 9.) According to the Plan itself, however, an employee is disabled under the Plan if he falls within the scope of disability as defined at section 422A(c)(7) of the Internal Revenue Code. (Exh. U at 9.) Section 422A(c)(7) defines disability as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months." 26 U.S.C. § 22(e)(3). Harding has failed to come forward with evidence that he was disabled within the meaning of section 422A(c)(7) of the Code and thus within the meaning of the Plan; in fact, he conceded that any drug problem he may have had has not interfered with his ability to work. (Harding Dep. at 137.) Because a party opposing a motion for summary judgment may not rest upon the mere allegations of the pleadings but "must adduce more than a mere scintilla of evidence in its favor," *Carlson v. Arnot–Ogden Memorial Hosp.*, 918 F.2d 411, 413 (3d Cir.1990), Harding's burden here was to produce sufficient evidence from which a reasonable jury could conclude that Harding was entitled to exercise his SARs upon his discharge. Harding has failed to satisfy this burden. Because the record is completely devoid of any evidence demonstrating Harding's contractual entitlement to SARs, we find that there is no genuine issue of material fact and summary judgment will accordingly be granted as a matter of law on Harding's claim for SARs pursuant to the WPCL.

## IV. HARDING'S SUMMARY JUDGMENT MOTION.

Harding has moved for summary judgment on his claim for severance pay benefits brought pursuant to the WPCL. Because this Court has determined that those claims are preempted by ERISA, *see* discussion above, Harding's motion for summary judgment will be denied.

## V. REQUEST TO AMEND COMPLAINT TO ASSERT ERISA CLAIM.

█ We note that Duquesne Light has moved in the alternative for summary judgment on the severance pay claim under ERISA. An examination of the Complaint and every other document filed with the Court leads to the conclusion that the Complaint as it stands does not state a federal claim pursuant to ERISA, and Harding never argues that he has, in fact, stated such a claim in his Complaint. Instead, Harding states only that "[u]nder FRCP 15(b) the court can amend the pleadings to conform to the evidence." We agree with Duquesne Light that Rule 15(b) is inapplicable here.[4] In the interests of justice, however, we believe we should construe the above statement in Harding's response brief to be a request for leave of Court to file an Amended Complaint pursuant to Fed.R.Civ.Proc. 15(a), which allows a party to amend a pleading by leave of court. Such leave to amend "shall be freely given when justice so requires." Fed.R.Civ.Proc. 15(a). The Third Circuit Court of Appeals has held that "prejudice to the non-moving party is the touchstone for the denial of an amendment" under Rule 15(a). *Cornell & Co., Inc., v. Occupational Safety & Health Review Comm'n*, 573 F.2d 820, 823 (3d Cir.1978). Although we acknowledge that the request to amend comes late in these proceedings, we do not believe that Duquesne Light will be unduly prejudiced by allowing Harding to amend his Complaint to state an ERISA claim. Duquesne Light has been aware since the onset of this litigation that Harding seeks to recover employee benefits he believes are owed to him, and, as Duquesne Light itself so clearly

---

4. By its very terms, Rule 15(b) applies only when "issues not raised by the pleadings are *tried* by express or implied consent of the parties." Fed.R.Civ.Proc. 15(b).

states in its brief, Duquesne Light's severance pay policy is a covered plan under ERISA. Duquesne Light has also correctly pointed out that ERISA § 502(a), 29 U.S.C. § 1132(a), provides Harding with the exclusive vehicle for the remedy he seeks, the recovery of benefits under a covered plan.[5] *See* Def. Memo. Supp. of Mot. Summ. Judg. at 43–45. Moreover, the parties conducted discovery under the premise that the issue at hand was whether Harding's termination rendered him ineligible to collect the employee benefits he seeks under Duquesne Light's policies. This central issue remains the same, whether it is classified as arising under the WPCL or pursuant to ERISA. As the Supreme Court has stated, "[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962).

We will therefore allow Harding an opportunity to amend his Complaint to assert a claim pursuant to ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B). However, we believe that we must impose certain conditions on the leave to amend to avoid unduly prejudicing Duquesne Light. First, Harding will have 20 days to file an Amended Complaint with the Court, and no extensions of time will be permitted. If Harding fails to file an Amended Complaint within 20 days of the date of the order accompanying this opinion, this case will be closed.

Second, because the action up to this point has involved only the recovery of benefits contractually owed to him under Duquesne Light's policies, Harding will only be permitted to assert an ERISA claim pursuant to 29 U.S.C. § 1132(a)(1)(B). No other claims will be permitted.

Third, no further discovery will be permitted. To reopen discovery at this late stage would unduly prejudice Duquesne Light.

Finally, Harding will not be permitted to assert an ERISA claim for his unused vacation time. Such an amendment

would be futile, because it is well-settled that a company's policy of paying its discharged employees for their unused vacation time is not "an employee welfare benefit" plan covered by ERISA. *Massachusetts v. Morash,* 490 U.S. 107, 116, 109 S.Ct. 1668, 1673, 104 L.Ed.2d 98 (1989).[6] Leave to amend pursuant to Fed.R.Civ.Proc. 15(a) may properly be denied where the amendment would be futile. *Averbach v. Rival Mfg. Co.,* 879 F.2d 1196, 1203 (3d Cir.1989).

We realize that Duquesne Light has already challenged the merits of an ERISA claim in its motion for summary judgment and would no doubt prefer that the Court rule immediately on the merits of such a claim. However, no such claim is presently before the Court. Until Harding files his Amended Complaint with the Court, we believe that Duquesne Light's motion for summary judgment on the merits of an ERISA claim is premature. Accordingly we render no decision today on whether Harding has adduced sufficient evidence to defeat summary judgment on a claim brought pursuant to 29 U.S.C. § 1132(a)(1)(B). Duquesne Light may, of course, challenge the ERISA claim on any ground once Harding has filed an Amended Complaint.

---

**5.** That section provides that "[a] civil action may be brought ... by a participant or beneficiary ... to recover benefits due to him under the terms of his plan." 29 U.S.C. § 1132(a)(1)(B).

**6.** We do not address whether a plan to award stock appreciation rights is an "employee benefit plan" pursuant to ERISA.