EUGENIA HOSPITAL

v.

Young Ja KIM, et al.

Civ. A. No. 93–1865.

United States District Court,
E.D. Pennsylvania.

Jan. 25, 1994.

Lisa D. Stern, Miller, Turetsky, Rule & McLennan, Norristown, PA, for plaintiff.

Craig S. Boyd, Boyd & Karver, Boyertown, PA, Thomas E. Seus, Kelly, McLaughlin & Foster, Thomas J. Momjian, Pepper Hamilton & Scheetz, Philadelphia, PA, Thomas D. Rees, High, Swartz, Roberts & Seidel, Norristown, PA, for defendants.

## EXPLANATION AND ORDER

ANITA B. BRODY, District Judge.

### Introduction

On January 18, 1991, Young Ja Kim was admitted to Eugenia Hospital for inpatient treatment. At that time, Mrs. Kim and her husband were employees of WLR Foods, Inc. (WLR), and covered by its employee health plan.

Eugenia Hospital alleges that at the time of Mrs. Kim's admission, it contacted Family Health Plan (now Ethix Mid Atlantic, here "FHP"), the "medical benefits agent and representative" for the WLR employee benefit plan, to determine the scope of Mrs. Kim's coverage. FHP allegedly provided pre-admission certification to Eugenia Hospital, and represented that Mrs. Kim was entitled to 80% coverage for her inpatient costs after satisfaction of a $150.00 deductible, and 100% coverage for her inpatient costs after satisfaction of a $750.00 deductible. Eugenia Hospital alleges that it was not informed that a $10,000.00 coverage limitation applied.

On or about March 3, 1993, Eugenia Hospital filed this suit against Mr. and Mrs. Kim, WLR, FHP, and Total Program Administrators (TPA), the administrator of the WLR employee benefit plan, for unpaid medical bills in excess of $11,000.00. Eugenia Hospital claims a right to be paid under theories of breach of contract (as to Mr. Kim), promissory estoppel/quasi contract, negligent misrepresentation, and negligence.

On April 7, 1993, WLR removed this suit to the Eastern District of Pennsylvania, on the ground that Eugenia Hospital's claim against it is properly within the scope of the Employee Retirement Income Security Act of 1974 (ERISA), and therefore falls within this court's federal question jurisdiction.

### Discussion

■ In general, removal to federal court is permitted only when the basis for federal jurisdiction appears on the face of the complaint (the "well-pleaded complaint rule"). *Louisville & Nashville R. Co. v. Mottley,* 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908). This test is not satisfied here, as Eugenia Hospital pleads only state law claims, the parties are not totally diverse, and the amount in controversy is less than $50,000.00. Federal preemption is ordinarily a defense to the plaintiff's claim and will not, by itself, authorize removal. *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 63, 107 S.Ct. 1542, 1546, 95 L.Ed.2d 55 (1987).

■ There is an "independent corollary" to the well-pleaded complaint rule where Congress so completely preempts a particular area that any civil complaint raising this select group of claims is deemed "necessarily federal in character". *Metropolitan Life,* 481 U.S. at 63–64, 107 S.Ct. at 1546–47. Once an area of state law has been completely preempted by an act of Congress, any claim based on that preempted state law is considered from its inception a federal claim. *Albert Einstein Medical Center v. National Benefit Fund for Hospital and Health Care Employees,* 740 F.Supp. 343, 348 (E.D.Pa. 1989).

■ Two conditions must be met before the complete preemption doctrine will establish federal jurisdiction over a state law claim: 1) the enforcement provisions of a federal statute must create a federal cause of action vindicating the same interest that the plaintiff's claim seeks to vindicate, and 2) there must be affirmative evidence of a congressional intent to permit removal despite the plaintiff's exclusive reliance on state law. *Allstate Ins. Co. v. The 65 Security Plan,* 879 F.2d 90, 93 (3d Cir.1989).

### 1. Does the Hospital Have a Federal Cause of Action under ERISA?

■ The threshold question is whether ERISA's enforcement provision provides a federal cause of action to vindicate the rights that Eugenia Hospital seeks to vindicate. ERISA's enforcement provision is found at 29 U.S.C. § 1132(a)(1), which provides, that "[a] civil action may be brought ... by a participant or beneficiary ... to recover benefits due him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1).

This provision creates a federal cause of action for participants and beneficiaries of an employee benefit plan who seek to enforce the terms of their plan. ERISA does not provide an express cause of action for a health care provider seeking payment in excess of that authorized by a plan. Section 1132(a)(1) cannot be interpreted to provide a federal cause of action to vindicate the Hospital's claim for two reasons: first, the Hospital does not have standing to sue under this provision, and second, § 1132(a)(1) does not seek to vindicate the type of claim brought by the Hospital.

Initially, the Hospital is neither a "beneficiary" nor a "participant" in the WLR employee benefit plan. Although there is no governing Third Circuit law on this point, most of the district courts of this Circuit have found either that a health care provider never has standing to sue under 29 U.S.C. § 1132(a)(1), or that it can do so only as an assignee of the rights of the plan participant. *See Charter Fairmount Institute, Inc. v. Alta Health Strategies,* 1993 WL 410829 (E.D.Pa. Sept. 24, 1993) (surveying cases and holding that hospital-assignee has standing to sue under § 1132(a)(1)). In this case, there is no allegation that the Hospital is an assignee of the Kims' rights, nor that the Hospital is suing under the Kims' rights under the plan; instead the Hospital is asserting a claim entirely in its own right under theories of promissory estoppel and misrepresentation.

Furthermore, § 1132(a)(1) only authorizes a suit "to recover benefits due ... *under the terms of [the] plan,* to enforce ... rights *under the terms of the plan,* or to clarify ... rights to future benefits *under the terms of the plan.*" The Hospital acknowledges that it is not owed further payment under the terms of the WLR employee health plan, and instead claims a right to be paid under an independent legal relationship that allegedly arose when the Hospital relied on FHP's representations as to the scope of Mrs. Kim's coverage. This claim does not fall within the scope of § 1132(a)(1). *Albert Einstein Medical Center v. Action Mfg. Co.,* 697 F.Supp. 883, 885 n. 3 (E.D.Pa.1988).

WLR argues, however, that the Hospital's allegations of vicarious liability require it to litigate the terms of the WLR employee benefit plan and distinguish this claim from *Action Manufacturing* and other cases that have held that health care providers' misrepresentation claims are not removable. In its complaint the Hospital alleged that FHP was acting as the agent for the other corporate defendants in answering telephone inquiries and therefore the misrepresentations made by FHP should be imputed to the other corporate defendants. The Hospital argues that a "Payor Agreement" between FHP and WLR[1], as well as common law principles of implied agency and apparent authority, establish an agency relationship between the parties independent of the terms of the employee benefit plan, and that its claim is therefore not one to enforce terms of the plan.

WLR agrees that the Payor Agreement is the source of any vicarious liability that might exist among the parties, but argues that because the Payor Agreement establishes a fiduciary relationship between FHP and WLR that is regulated by ERISA, that agreement is essentially part of the employee benefit plan, and any litigation regarding its terms is preempted by ERISA.

This argument is without merit. The statutory definitions of employee benefit plans covered by ERISA do not include fiduciary agreements. *See* 29 U.S.C. 1002(1)–(3). Furthermore, § 1132 makes *separate* provision for suit based on breach of a fiduciary duty in § 1132(a)(2), indicating that such agreements are not subsumed within the enforcement provision for employee benefit plans of § 1132(a)(1).[2] The terms of the Payor Agreement are independent from the

---

**1.** None of the pleadings filed by the parties revealed the source of the alleged agency relationships, so on November 9, 1993, this court ordered the parties to conduct discovery and submit memoranda on the limited question of the source of the alleged vicarious liability among the defendants. In response to the court's order, the parties provided copies of the "Payor Agreement" between FHP and WLR.

**2.** The Hospital also could not sue under § 1132(a)(2), as that provision only provides a cause of action for the breach of fiduciary obligations, and, like § 1132(a)(1), provides standing

employee benefit plan for the purposes of this litigation. The Hospital's allegations of vicarious liability between the defendants can be litigated without reference to the terms of the employee benefit plan, making this a suit entirely outside the scope of ERISA's enforcement provisions.

### 2. Is There Affirmative Evidence of Congressional Intent to Permit Removal of Such Claims?

Where the plaintiff's claim falls within the enforcement provisions of § 1132(a), Congress has "clearly manifested" an intent to make such claims removable despite the plaintiff's reliance on state law. *Metropolitan Life*, 481 U.S. at 65–66, 107 S.Ct. at 1547. There is no similar evidence that Congress intended to allow removal when the plaintiff's claim does not fall within those enforcement provisions. *Allstate*, 879 F.2d at 94.

Neither of the factors needed to invoke the doctrine of "complete preemption" are present in this case. The case will be remanded to the state court.

### ORDER

**AND NOW,** this 25th day of January 1994, it is **ORDERED** that Eugenia Hospital's petition to remand is **GRANTED** and this matter is **REMANDED** to the Montgomery County Court of Common Pleas.

only for participants, beneficiaries, and fiducia-  ries of the employee benefit plan.