Samuel A. RUSSO, Administrator
of the Estate of Eric B.
Fountain, Plaintiff,

v.

ABINGTON MEMORIAL HOSPITAL and
US Healthcare a/k/a US Healthcare Inc.
and d/b/a HMO of Pennsylvania and
New Jersey, Defendants.

Civ. No. 94–195.

United States District Court,
E.D. Pennsylvania.

March 29, 1995.

Marybeth McCabe, Gilfillan, Gilpin & Brehman, Jenkintown, PA, for Samuel A. Russo.

Michael F. Kraemer, White & Williams, Philadelphia, PA and Stephen A. Ryan, Bala Cynwyd, PA, for Abington Memorial Hosp.

Noreen M. Walsh, Buchanan Ingersoll, P.C., Philadelphia, PA, for US Healthcare, a/k/a US Healthcare, Inc.

## MEMORANDUM

LOUIS H. POLLAK, District Judge.

Eric B. Fountain was admitted to the Albert Einstein Medical Center on or about January 22, 1990, as a result of a stab wound. He remained there for two months, during which time he purportedly incurred a hospital bill in the amount of $291,233.05. Fountain died in September 1990. Seeking to be reimbursed for the hospital bills, Samuel A. Russo, the administrator of Fountain's estate, filed this action against the defendants—Fountain's former employer and the health maintenance organization ("HMO") in which Fountain allegedly was enrolled—in the Court of Common Pleas of Philadelphia County, Pennsylvania. The defendant HMO, United States Health Care Systems of Pennsylvania, Inc., ("U.S. Healthcare")[1] filed a timely notice of removal, to which the defendant employer, Abington Memorial Hospital ("Abington"), consented.

U.S. Healthcare then filed a motion to dismiss the two counts of the complaint that run against it, and, shortly thereafter, Russo filed a timely motion to remand the case to state court. Because the law and facts underlying these two motions are intertwined—and because resolution of these motions might well moot certain other pending motions—I shall take them up first before addressing the remaining motions.

### THE MOTION TO REMAND and THE MOTION TO DISMISS

The gravamen of Russo's complaint is that as an employee of Abington, Fountain was

1. The caption, which is governed by the complaint, misidentifies the HMO defendant as US Healthcare a/k/a US Healthcare, Inc.

allegedly enrolled in Abington's group health care plan, which is administered by U.S. Healthcare, on January 1, 1990. According to the complaint, U.S. Healthcare denied coverage for the nearly $300,000 in hospital bills, asserting that Abington had failed to enroll Fountain in the health care plan. Complaint ¶ 10. The first count of the complaint alleges Abington breached its employment contract with Fountain by failing to enroll him in the plan; the second and third counts run against U.S. Healthcare, asserting that it breached the health benefit contract and that it is estopped from denying payment of benefits on behalf of Fountain. *See* Complaint ¶¶ 11, 21, 31. As stated, these claims arise under state, rather than federal, law—presumably the law of Pennsylvania.

 The basis for U.S. Healthcare's petition to remove this case from state court, and of its motion to dismiss, is the preemption provision found in the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1144(a). 28 U.S.C. § 1441(a) provides the authority by which defendants may remove actions from state court to federal court, but, by its very text, the reach of § 1441(a) is limited to "civil action[s] ... of which the district courts of the United States have original jurisdiction." Because preemption is an affirmative defense, the well-pleaded complaint rule [2] generally precludes a defendant from relying on preemption as a basis for removal jurisdiction. *See Caterpillar, Inc. v. Williams,* 482 U.S. 386, 393, 107 S.Ct. 2425, 2430, 96 L.Ed.2d 318 (1987). Under what is known as

the "complete preemption" doctrine, *id.,* however, "a state cause of action [that] is 'really' a federal cause of action ... may be removed to federal court if the 'federal cause of action completely preempts ... [the] state cause of action.'" *Goepel v. National Postal Mail Handlers Union,* 36 F.3d 306, 310 (3d Cir. 1994) (quoting *Franchise Tax Bd. v. Construction Laborers Vacation Trust,* 463 U.S. 1, 24, 103 S.Ct. 2841, 2854, 77 L.Ed.2d 420 (1983) (emendation in *Goepel*)), *petition for cert. filed,* January 23, 1995 (No. 94–1258).

One of the few statutory contexts in which the Supreme Court has applied the complete preemption doctrine is that of ERISA. *See Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987). In *Metropolitan Life,* the Court held that, because "Congress has clearly manifested an intent to make causes of action within the scope of the civil enforcement provisions of § 502(a) [of ERISA, 29 U.S.C. § 1132(a),] removable to federal court," *id.* at 66, 107 S.Ct. at 1548, actions under state law that fall within the scope of § 1132(a) are "necessarily federal in character" and therefore arise under the laws of the United States, making them removable to federal court under 28 U.S.C. § 1441. *Id.* at 67, 107 S.Ct. at 1548.[3]

The question, then, is whether the claims made by Russo against U.S. Healthcare fall within ERISA's civil enforcement mechanism, 29 U.S.C. § 1132(a). If so, then the claims are (1) federal in character and therefore removable under 28 U.S.C. § 1441(a),

---

**2.** The well-pleaded complaint rule generally allows "removal to federal court ... only when the basis for federal jurisdiction appears on the face of the complaint." *Eugenia Hosp. v. Kim,* 844 F.Supp. 1030, 1031 (E.D.Pa.1994); *see Louisville & Nashville R. Co. v. Mottley,* 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908). The complete preemption doctrine, discussed in the text *infra,* "is an 'independent corollary' to the well-pleaded complaint rule." *Eugenia Hosp.,* 844 F.Supp. at 1031.

**3.** U.S. Healthcare does not distinguish between the preemptive effect of ERISA's exclusive civil enforcement mechanism, 29 U.S.C. § 1132, and its preemption provision, 29 U.S.C. § 1144. In another case, the distinction might be important, for courts have held that the complete preemption doctrine of *Metropolitan Life* only applies to actions that fall within § 1132, and not to all

actions preempted by § 1144. *See, e.g., Alexander v. Electronic Data Systems Corp.,* 13 F.3d 940, 945 (6th Cir.1994); *see also id.* at 945 n. 6 (suggesting that *Shiffler v. Equitable Life Assurance Soc'y,* 838 F.2d 78, 81–82 (3d Cir.1988), may be read to hold that a meritorious preemption defense under § 1144 may, alone, confer federal question jurisdiction, but reading the holding of *Metropolitan Life* as confined only to claims that fall within the scope of § 1132). The facts of this case do not require me to construe this aspect of *Shiffler* because, as I hold in the text, *infra,* at least one of Russo's claims against U.S. Healthcare falls within the scope of § 1132(a)(1)(B). *Compare Eugenia Hosp.,* 844 F.Supp. at 1032–33 (only claims that fall within the enforcement provisions of § 1132(a) support application of complete preemption doctrine).

and (2) preempted, which finding would result in my granting U.S. Healthcare's motion to dismiss.

Section 1132(a)(1)(B) authorizes civil actions to be brought "by a participant or beneficiary ... to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." So, the next questions are (1) was there a "plan" in place, as that term is defined by ERISA, and, if so, (2) was Fountain a "participant"?

### The existence of an "employee benefit plan" and Fountain's status under ERISA

■ U.S. Healthcare asserts that because the health insurance agreement under which Russo makes his claims was a condition of Fountain's employment, it is *ipso facto* an "employee benefit plan" as that phrase is defined by ERISA. Russo responds by asserting that there was no "employee benefit plan" in place, so ERISA is inapplicable, and therefore removal was inappropriate. Russo's argument is essentially a legal one. He acknowledges that Abington purchased health insurance for its employees, but he argues that the mere purchase of insurance does not constitute the creation of an "employee benefit plan" for purposes of ERISA. In support, he cites an early decision by the Fifth Circuit that is, according to the defendants, no longer good law. *See Taggart Corp. v. Life and Health Benefits Administration, Inc.,* 617 F.2d 1208 (5th Cir.1980), *cert. denied,* 450 U.S. 1030, 101 S.Ct. 1739, 68 L.Ed.2d 225 (1981).

29 U.S.C. § 1002(3) defines the terms " 'employee benefit plan' or 'plan' " as follows: "an employee welfare benefit plan or an employee pension benefit plan or a plan which is both an employee welfare benefit plan and an employee pension benefit plan." Section 1002(1)(A) defines the term "employee welfare benefit plan" to mean, in relevant part,

> any plan, fund, or program ... established or maintained by an employer ... to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or

their beneficiaries, through the purchase of insurance or otherwise, ... medical, surgical or hospital care benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services....

The plain text of § 1002(1)(A) would appear to include, as one means of "establish[ing]" or "maintain[ing]" an "employee benefit plan," the mere purchase of health insurance by an employer for a plan participant. Nonetheless, in a decision on which Russo relies quite heavily, the Fifth Circuit appears to have held to the contrary.

In *Taggart,* the Fifth Circuit held that ERISA does not "regulate[ ] bare purchases of health insurance where ... the purchasing employer neither directly nor indirectly owns, controls, administers or assumes responsibility for the policy or its benefits." *Id.* at 1211. Arguably, that proposition would apply to the facts of this case, for the health insurance "policy" and "its benefits" were administered by U.S. Healthcare, and not by Abington.

No court other than the Fifth Circuit has accepted the proposition that the "bare purchase[ ] of health insurance" cannot create an employee benefit plan under ERISA; in fact, several courts of appeals have expressly rejected the holding in *Taggart. See Madonia v. Blue Cross & Blue Shield,* 11 F.3d 444, 447 (4th Cir.1993) (collecting cases from the Sixth, Seventh, and Ninth Circuits), *cert. denied,* — U.S. ——, 114 S.Ct. 1401, 128 L.Ed.2d 74 (1994). Even the Fifth and Eleventh Circuits (those circuits initially bound by the holding in *Taggart,* which predates the creation of the Eleventh Circuit) have "retreated from," *id.,* that holding. *See Memorial Hosp. Sys. v. Northbrook Life Ins. Co.,* 904 F.2d 236, 242 (5th Cir.1990); *Donovan v. Dillingham,* 688 F.2d 1367, 1375 (11th Cir.1982) (en banc).

The Eleventh Circuit's retreat from *Taggart* could be better characterized as outright rejection:

> [i]f *Taggart* implies that an employer or employee organization that only purchases

a group health insurance policy ... to provide health insurance to its employees or members cannot be said to have established or maintained an employee welfare benefit plan, we disagree. To that extent *Taggart* shall no longer be binding in the Eleventh Circuit.

*Dillingham,* 688 F.2d at 1375.

And, while not going quite as far in rejecting *Taggart* as did the *Dillingham* court, the Fifth Circuit does agree with the Eleventh Circuit that

"the purchase of insurance does not conclusively establish a plan, fund or program, but the purchase is evidence of the establishment of a plan, fund, or program; the purchase of a policy or multiple policies covering a class of employees offers substantial evidence that a plan, fund, or program has been established."

*Memorial Hosp.,* 904 F.2d at 242 (quoting *Dillingham,* 688 F.2d at 1373).

The Third Circuit does not appear to have expressly addressed the question of whether an employer may create an employee benefit plan under ERISA by merely purchasing health insurance coverage for its employees. There is no reason to believe, however, that the Third Circuit would not, at a minimum, adopt the position, which is shared by all of the courts of appeals that have addressed this issue, that purchase of health insurance coverage is evidence of the existence of a plan.

There is no dispute that Abington provides health care, along with other benefits, to its employees, or that one of the options under which an employee may receive health care benefits from Abington is through enrollment in a plan administered by U.S. Healthcare. The uncontroverted affidavit of Hy Rudin, Abington's Vice President of Human Resources, provides ample support for a finding that the health care plan under which Russo asserts monies are owed constitutes an "employee welfare benefit plan" under § 1002(1)(A). Russo's only argument against such a finding rests on *Taggart,* and, as the foregoing discussion suggests, *Taggart* would not prevent even the Fifth Circuit from finding that this health care plan is governed by ERISA.

Because Fountain was an employee of Abington and he was "or [would have] become eligible to receive a benefit of any type" under the plan, § 1002(7), it is clear that he was a participant in the plan.[4] The only remaining question, then, is whether Russo's claims could—indeed, must—be brought under 29 U.S.C. § 1132(a)(1)(B).

### The nature of Russo's claims

Russo's claims against U.S. Healthcare are two: that it breached the health benefit contract with Abington and that it is estopped from denying payment of benefits on behalf of Fountain. *See* Complaint ¶¶ 21, 31. These claims would appear to fall within the scope of ERISA's civil enforcement mechanism—that is, Russo seeks, on Fountain's behalf, "to recover benefits due to him under the terms of his plan" and/or "to enforce his rights under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).[5] Accordingly, they are federal in nature, and removal under 28 U.S.C. § 1441(a) was proper. Russo's motion to remand will therefore be denied.

It follows automatically that Russo's state-law claims are preempted by ERISA. Any claim which falls within the scope of ERISA's civil enforcement mechanism is necessarily preempted by ERISA's preemption provision, which provides, in relevant part, that ERISA "supersede[s] any and all State laws insofar as they ... relate to any employee benefit plan...." 29 U.S.C.

---

4. Under ERISA, "participant" is defined, in relevant part, to include "any employee or former employee of an employer ... who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer...." 29 U.S.C. § 1002(7).

5. A finding that either of the two claims falls within the scope of § 1132(a) would suffice as a basis for removal jurisdiction, and, assuming that there may be a question about whether a claim of equitable estoppel falls within § 1132, there can be no question that a claim for breach of a health care contract governed by ERISA is covered by § 1132. *See Metropolitan Life,* 481 U.S. at 61–63, 107 S.Ct. at 1545–1546 (action for, *inter alia,* breach of contract falls directly under § 1132(a)(1)(B)).

§ 1144(a).[6] Accordingly, U.S. Healthcare's motion to dismiss will be granted,[7] but Russo will be given an opportunity to replead his claims under ERISA.

## THE CLAIMS AGAINST ABINGTON

■ The disposition of the motion to remand and the motion to dismiss leaves Russo's complaint with but the first count: a claim against Abington for breach of its employment contract with Fountain. The substance of the alleged breach is Abington's failure to enroll Fountain in the health care plan administered by U.S. Healthcare. Abington did not join in U.S. Healthcare's petition to remove this case from state court, nor has Abington argued that the first count is preempted by ERISA (although the issue is raised as an affirmative defense in Abington's answer). So—since there is no claim of diversity—there would appear to be some question whether this court has subject-matter jurisdiction over the claim against Abington.

Although Abington did not petition for removal, it did consent to U.S. Healthcare's petition to remove the case and it even filed an answer to Russo's motion to remand. If Russo is able, by amending his complaint, to state a claim against U.S. Healthcare under ERISA, it would then seem appropriate to exercise supplemental jurisdiction over the claim against Abington. *See* 28 U.S.C. § 1367. Accordingly, this case will remain, for now, in federal court.

6. Assuming the existence of a question whether Russo's equitable-estoppel claim falls within the scope of § 1132, *see supra* n. 5, there is no question that that claim, like Russo's claim for breach of contract, "relate[s] to [an] employee benefit plan," and is therefore preempted by § 1144(a).

7. Because I have relied on an affidavit—the Rudin Affidavit—in ruling on the motion to remand, one might argue that the motion to dismiss should therefore be converted into a motion for summary judgment, pursuant to Federal Rule of Civil Procedure 12(b). In ruling on a motion to remand, it is sometimes necessary for the court to make certain factual findings, *see* 14A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3739, at 581 (2d Ed.1985) ("[t]he district court, without

## THE REMAINING MOTIONS

The other motions currently pending are three: (1) U.S. Healthcare's motion to dismiss the cross-claim brought by Abington, (2) Abington's motion for leave to file its cross-claim against U.S. Healthcare, (3) Russo's motion to compel and for sanctions against Abington.

### Abington's Cross-claim

■ Seven weeks after answering the complaint, Abington filed a cross-claim against U.S. Healthcare seeking indemnification for any judgment that may be entered against Abington in this action. The problem is one of timeliness. The cross-claim is, in effect, an attempt to amend the answer. But the cross-claim was not filed within twenty days following the filing of the answer, during which time, pursuant to Federal Rule of Civil Procedure 15(a), pleadings to which no responsive pleading is permitted may be freely amended. Accordingly, U.S. Healthcare has moved to dismiss the cross-claim.

Abington did not file a response to the motion to dismiss, but instead filed a motion seeking leave to amend its answer. Rule 15(a) provides that, after expiration of the twenty-day period in which a pleading may be freely amended, a party may amend a pleading "only by leave of court or by written consent of the adverse party."

U.S. Healthcare argues that because of Abington's delay in attempting to comply with the Rules, Abington's request for leave should be denied. I disagree. While there

a jury, decides all issues of fact raised by a motion to remand"), and, in that connection, it is appropriate to rely on affidavits and other documents, or, if necessary, to hold a hearing. In ruling on a motion to dismiss, however, it is inappropriate to rely on material outside of the complaint unless the court decides to convert the motion to dismiss to a motion for summary judgment.

In this case, I have relied on the Rudin Affidavit only in connection with the motion to remand. Although one of the findings supporting the ruling on the motion to remand—namely, that, within the meaning of ERISA, a "plan" was "established"—constitutes a predicate for the ruling on the motion to dismiss, this does not require conversion of the motion to dismiss into a motion for summary judgment.

certainly has been delay associated with this action, much of that delay is attributable to the court, and none of that delay would appear to have prejudiced U.S. Healthcare in any appreciable manner. Presumably U.S. Healthcare has investigated every aspect of this dispute, and it is difficult to imagine what incremental prejudice U.S. Healthcare will suffer if Abington is allowed to proceed with its cross-claim at what is, in fact, a relatively early stage in the litigation. *See Coventry v. United States Steel,* 856 F.2d 514, 519–20 (3d Cir.1988) (abuse of discretion to deny leave to amend when amendment would not cause further delay or unduly prejudice opposing party). *Compare Berger v. Edgewater Steel Co.,* 911 F.2d 911, 924 (3d Cir.1990) (no abuse of discretion in denying leave to amend when amendment "would put an unwarranted burden on the trial court and be likely to result in prejudice to" the opposing party), *cert. denied,* 499 U.S. 920, 111 S.Ct. 1310, 113 L.Ed.2d 244 (1991).

Accordingly, Abington's motion for leave to file its cross-claim will be granted, and U.S. Healthcare's motion to dismiss Abington's cross-claim will be denied.

### The Motion to Compel

■ Russo seeks an order that would compel Abington to respond to Russo's document requests. Abington has not responded to that motion, from which I may reach one of two conclusions: (1) Abington has, since the filing of the motion, responded to the document requests, or (2) Abington has not responded, and has no valid reason for not having done so. Russo's motion should, then, either be dismissed as moot or granted. The cautious course is to grant the motion, which is what I will do.