**Marilyn GOULD, as Executrix of the Estate of Jack Gould, and Marilyn Gould, Individually, Plaintiffs,**

v.

**GREAT–WEST LIFE & ANNUITY INSURANCE CO., Defendant.**

**Civil Action No. 954382(WHW).**

United States District Court, D. New Jersey.

Feb. 24, 1997.

Irwin L. Facher, Paul J. Soderman, Zucker, Facher & Zucker P.A. West Orange, NJ, for Plaintiffs.

Michael J. Zaretsky, Chorpenning, Good, Carlet & Garrison, Clifton, NJ, for Defendant.

WALLS, District Judge.

### OPINION

Plaintiff Marilyn Gould, individually and as executrix of her late husband's estate, brings this action against defendant Great–West Life & Annuity Insurance Co. ("Great–West") to recover life insurance benefits she claims are due her as the sole beneficiary of

her late husband's insurance policy. Defendant moves to dismiss the complaint for failure to state a claim upon which relief can be granted and plaintiff cross-moves for summary judgment. Pursuant to Rule 78 of the Federal Rules of Civil Procedure. the Court decides these motions without oral argument.

## I. BACKGROUND

### A. Great–West Insurance Policy

For over thirty years. Jack Gould worked for U.S. Liability, Co. ("U.S.Liability") as a lawyer/claims examiner. As a U.S. Liability employee, he participated in the company's employee benefits plan which included group life, disability and other insurance benefits issued and administered by Great–West. U.S. Liability's employee benefits plan was established pursuant to the Employee Retirement Income Security Act ("ERISA"). The terms and conditions of Great–West's insurance policies are set forth in a summary plan description ("SPD"). The SPD provides that insurance coverage extends to full-time employees who are U.S. residents and work at least twenty-eight hours a week. Ryan Aff., Ex.B, Eligibility/Termination at 4. In the event of death. the plan provides that a deceased employee's life insurance benefits are to be disbursed to his or her designated beneficiary. Ryan Aff., Ex. B., Life Benefit at 6.

This action involves claims by Gould's widow and beneficiary to recover life insurance benefits under the plan. The following provisions governing plan eligibility and coverage are central to this dispute. Under the heading "Plan Eligibility, Termination and Reinstatement." the SPD lists the following circumstances that result in termination of an employee's coverage:

> Even if the payroll deduction practices of your **Employer** continue in error after the date determined below, your coverage under this **Plan** terminates on the earliest of:
> - the date **Loss of Residence** occurs,
> - the date your coverage terminates,
> - the date you are no longer in an eligible class:
> - the date that you or your **Employer** fails to make a required premium payment,
> - the date that your **Employer's Plan** terminates,
> - the date that your **Service** terminates.

> If you are not at **Work** because of **Illness**, leave-of-absence, or temporary lay-off your coverage will continue as long as premiums continue to be paid until the earliest of:
> — the date determined by your **Employer**. This date must be determined on the same basis for all Employees.
> — the date you start **Work** with another **Employer.**
> — the date which is:
> — for leave-of-absence or lay-off. 31 days from the date your Service terminates; or
> — for **Illness;**
> - for all benefits except Long Term Disability. 90 days from the date your **Service** terminates.
> - for Long Term Disability:
> •• if you are receiving full salary from your Employer. until the date in which you are no longer receiving full salary:
> •• if you are in the Elimination Period or if you are receiving Long Term Disability Benefits, until the earlier of:
> — the date on which you cease to be Totally Disabled:
> and
> — the date on which your Long Term Disability Benefits cease.

See Ryan Aff. Ex. B. Eligibility/Termination at 4.

The SPD defines "service" as "**Employment** with an **Employer** on an active, full-time and full pay basis for at least 28 hours per week and at a place other than the **Employee's** residence" and work as "**Service** with an **Employer**." Ryan Aff. Ex. B, Definitions at 5–6.

The SPD also offers long term disability benefits for eligible employees. To qualify, an employee's total disability must commence while the employee is insured under the plan and the total disability must last for at least 180 consecutive days. Ryan Aff, Ex. B, LTD at 3. A period of total disability begins with "the date [an employee is] first absent from

**Work** as a result of the Total Disability." *Id.* Under the heading "Disability Waiver of Premium Benefit" the SPD states that an employee who has been totally disabled for at least nine consecutive months may be eligible for continuation of his or her life insurance benefits without making further premium payments if the employee meets certain criteria. *See* Ryan Aff., Ex. B. Life Benefit at 3. One criterion is that an employee's total disability must commence before the employee is sixty years old. *Id.* The SPD informs employees that if they qualify for such a continuance, "all premiums paid for any Individual Life Insurance policy after you become **Totally Disabled** for nine months will be returned to you." *Id* In addition, this section states that "If you should die during this nine month period, the Death Benefit will be payable under either the group policy or the Individual Policy." *Id.*

### B. *Plaintiffs Claim for Benefits*

Gould died of cancer on September 23, 1994 at the age of sixty-five. He last reported for work on November 12, 1993 and was unable to work after this date because he became totally disabled. Until his death. U.S. Liability considered him an employee and expected him to return to work if he recovered. Rivituso Aff at ¶ 4. After he became totally disabled, U.S. Liability continued to send Great–West timely insurance premium payments to maintain his insurance coverage. Gould began receiving long-term disability benefits from Great–West on May 15, 1994. Rivituso Aff at ¶¶ 2 and 4. These benefits were to continue for a maximum of thirty months. terminating on November 14, 1994. He was receiving long-term disability payments under the plan when he died.

In October 1994, plaintiff. as Gould's beneficiary, submitted a claim application to Great–West for his life insurance benefits which are worth $32.500.00. The claim application indicated the date Gould last reported to work. his date of birth and date of death. On November 10, 1994, defendant denied plaintiffs claim on the ground that his life insurance coverage had been terminated. Relying on the SPD provision which provides that in the event of illness coverage termi-

nates 90 days from the date an employee's service terminates, Great–West determined that Gould's insurance coverage ended on February 11, 1994, 90 days after he last reported for work. Ryan Aff., Ex. E. It further noted that Gould was ineligible for continuation of coverage based on his total disability because he was over sixty years of age when his total disability commenced. *Id.*

After Great–West denied the claim, U.S. Liability challenged its determination. U.S. Liability asserted that Gould's insurance coverage had not been terminated because it had paid his insurance premiums during his absence from work and because Great–West had previously paid claims on similarly situated employees. In a letter dated January 13, 1995. Great–West acknowledged that it had received and retained those payments but alleged that U.S. Liability made those payments in error. Rivituso Aff., Attachment. Great–West promised to refund the payments. *Id.* In addition. Great–West stated that even if it had honored a claim on similarly situated employees. any such payments were made in error and therefore, had no bearing on whether it was obligated to pay plaintiffs claim.

### C. *Procedural History*

On July 19, 1995, plaintiff commenced this action in New Jersey Superior Court, Essex County. Her two-count complaint alleged that defendant breached its contract by wrongfully denying her payment of benefits and a common law equitable estoppel claim based on defendant's alleged payment of life insurance claims on two similarly situated employees. On August 19.1995, defendant successfully removed the action to this Court on the ground that plaintiffs claims arise under federal law because they relate to an insurance plan governed by ERISA.

Defendant now moves to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted or alternatively, for summary judgment under Rule 56. In its moving papers, defendant argues that it properly denied plaintiff life insurance benefits based on the clear and unambiguous provisions of the plan. Defen-

dant also argues that because the plan falls within the scope of ERISA, plaintiffs complaint must be dismissed because it alleges common law claims.

Plaintiff cross-moves for summary judgment on the ground that Gould's service at Great–West had not terminated before his death. She also claims that the plan's provisions regarding the termination of life insurance coverage for ill employees are ambiguous and therefore. must be construed *contra proferentum* Great–West. Finally, plaintiff contends that defendant should be estopped from denying her claim because it has previously honored life insurance claims made by beneficiaries of similarly situated employees and because it accepted payments on Gould's behalf even though it was cognizant of his age, disability and employment status.

## II. *DISCUSSION*

### A. *Standard of Review*

Pursuant to Rule 12(b) of the Federal Rules of Civil Procedure. the Court will convert defendant's motion to dismiss to a motion for summary judgment because it asks the Court to consider documents outside of the pleadings. Fed.R.Civ.P. 12(b). Summary judgment is appropriate when "the moving party establishes that there is no genuine issue of material fact and that it is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The movant must show that if the evidence submitted were reduced to evidence admissible in court. it would be insufficient to permit the non-moving party to carry its burden of proof. *Celotex v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Once the moving party has carried its burden under Rule 56, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts in question." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The opposing party must set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations or denials of its pleadings. *Sound Ship Building Corp. v. Bethlehem Steel Co.,* 533 F.2d 96, 99 (3d

Cir.), *cert. denied,* 429 U.S. 860, 97 S.Ct. 161, 50 L.Ed.2d 137 (1976).

At the summary judgment stage. the court's function is not to weigh the evidence and determine the truth of the matter, but rather it is to determine whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986). In making this determination, the Court must construe the facts and inferences in a light most favorable to the non-moving party. *Id.*

### B. *ERISA Preemption*

ERISA "is a comprehensive statute enacted 'to promote the interests of employees and their beneficiaries in employee benefit plans.' " *In re Unisys Corp. Retiree Medical Benefit "ERISA" Litigation,* 58 F.3d 896 (3d Cir.1995) (*quoting Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 90, 103 S.Ct. 2890, 2896, 77 L.Ed.2d 490 (1983)). In crafting ERISA. Congress imbued it with an extremely broad preemption clause. Section 514(a) of the statute provides that ERISA. with certain enumerated exceptions not applicable here. "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan ...". 29 U.S.C. § 1144(a). *See Ingersoll–Rand Co. v. McClendon,* 498 U.S. 133, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990)(describing "conspicuous" breadth of ERISA's preemption clause). Preemption applies both to state statutory and common law claims. *Pilot Life v. Dedeaux,* 481 U.S. 41, 47, 107 S.Ct. 1549, 1552–53, 95 L.Ed.2d 39 (1987). A state law "relates to" an ERISA employee benefit plan. and is consequently preempted "if it has connection with or reference to such a plan." *Shaw,* 463 U.S. at 96–97, 103 S.Ct. at 2900. The Supreme Court has held that ERISA is the exclusive vehicle for challenging the processing and denial of benefits claim under ERISA plans. *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987).

In its motion, defendant asserts that the Court should dismiss the complaint because both its breach of contract and equitable estoppel claims are preempted by ERISA. Although plaintiff does not address

defendant's preemption argument, she appears to concede that the insurance plan falls within the Act by citing cases that involve ERISA claims. Because plaintiffs breach of contract and equitable estoppel claims challenge the denial of a benefits claim, this Court finds that they are preempted by ERISA. *See id; 1975 Salaried Retirement Plan for Eligible Employees of Crucible, Inc. v. Nobers,* 968 F.2d 401 (3d Cir.1992); *Shiffler v. Equitable Life Assurance Society of U.S.,* 838 F.2d 78 (3d Cir.1988). However. the Court disagrees with defendant's argument that ERISA preemption requires automatic dismissal of the complaint for failure to state a claim. Instead. the Court will first consider whether plaintiff's common law claims may be converted into claims for relief under ERISA.

The Third Circuit does not appear to have addressed whether a district court may convert state or common law claims into ERISA claims. District courts in this circuit that have considered motions to dismiss state law claims on the basis of ERISA preemption following removal to federal court have generally granted immediate dismissal of those complaints (*See Butler v. Wu,* 853 F.Supp. 125, 130 (D.N.J.1994) (state law torts claims dismissed because of ERISA preemption); *Institute of Penn. Hospital v. Travelers Ins. Co.,* 825 F.Supp. 727, 731 (E.D.Pa.1993) (hospital's state law claims for payment of medical services it rendered to patient dismissed because of ERISA preemption); *Pane v. RCA Corp.,* 667 F.Supp. 168, 172 (D.N.J. 1987), *aff'd,* 868 F.2d 631 (3d Cir.1989) (state law breach of contract claims with regard to severance benefits dismissed because of ERISA preemption)) or alternatively, granted plaintiff leave to properly replead claims under ERISA. *See Russo v. Abington Memorial Hospital,* 881 F.Supp. 177 (E.D.Pa. 1995); *Harding v. Duquesne Light Co.,* 882 F.Supp. 422 (W.D.Pa.1995). This court. however. finds persuasive. and consistent with the flexibility of the federal rules. the approach adopted by the Seventh Circuit in *Bartholet v. Reishauer A.G.,* 953 F.2d 1073 (7th Cir.1992) wherein it held that a court may convert state and common law claims into ERISA claims if they sufficiently plead claims for relief under the Act. *Id.* at 1078.

*See also Tolle v. Carroll Touch, Inc.,* 977 F.2d 1129 (7th Cir.1992).

In *Bartholet,* a former employee brought common law breach of contract claims against his employer alleging that it failed to provide promised severance and bonus payments and to create a pension plan with credit for his years of service with his prior employer. *Id.* at 1076. The employer successfully removed the action to district court asserting ERISA preemption and the district court granted its motion to dismiss the complaint on the ground that it failed to properly state a claim under ERISA. *Id.* On appeal, the Seventh Circuit held that the district court incorrectly concluded that ERISA preemption of plaintiffs common law claims required dismissal for failure to state a claim. *Id.* at 1077. Instead. the court determined that the proper inquiry was whether "relief is possible under any set of facts that could be established consistent with the allegations." *Id.* at 1078. In reaching this conclusion. the court observed that under Rule 8 of the Federal Rules of Civil Procedure, a complaint sufficiently raises a claim even if it fails to point to a legal theory or points to an incorrect legal theory as its basis, as long as "relief is possible under any set of facts that could be established consistent with the allegations." *Id.* It further noted that "removal depended on a conclusion that the complaint, as filed, arose under federal law" and therefore, requiring the plaintiff to replead the complaint was nonsensical because the district judge had already determined that there was but one possible interpretation of the document. *Id.* Similarly, this Court finds that requiring plaintiff in this action to replead what this court has already held to be federal claims would be inefficient and unjustified. The language of plaintiffs complaint is compatible with and delimits an alleged federal claim under ERISA. Consequently, Great–West's motion to dismiss on this ground is denied.

### C. Analysis of Claims

#### 1. Breach of Contract Claim

Under ERISA's framework. an "employee benefit plan [is] governed by written docu-

ments and summary' plan descriptions. which are the statutorily established means of informing participants and beneficiaries of the terms of their plan and its beneficiaries of the terms of their plan and its benefits." *Unisys*, 58 F.3d at 902. In interpreting the provisions of a plan governed by ERISA. terms "must be given their plain meanings, meanings which comport with the interpretation given by the average person." *McLain v. Metropolitan Life Ins., Co.*, 820 F.Supp. 169 (D.N.J.1993) (*quoting Wickman v. Northwestern Nat'l Ins. Co.*, 908 F.2d 1077, 1084 (1st Cir.1990), *cert denied*, 498 U.S. 1013, 111 S.Ct. 581, 112 L.Ed.2d 586 (1990)). A term is ambiguous if it is subject to reasonable alternative interpretations. *Alexander v. Primerica Holdings, Inc.*, 967 F.2d 90, 92 (3d Cir.1992). *Taylor v. Continental Group Change in Control Severance Pay Plan*, 933 F.2d 1227, 1232 (3d Cir.1991); *Mellon Bank, N.A. v. Aetna Business Credit, Inc.*, 619 F.2d 1001, 1011 (3d Cir.1980). If, upon review, a court can find "but one reasonable interpretation. then a fortiori there can be no ambiguity." *Curcio v. John Hancock Mut. Life Ins., Co.*, 33 F.3d 226, 231 (3d Cir.1994). "However, if the language is susceptible to more than one reasonable interpretation. then it will be found to be ambiguous." *Id.* The determination of whether a term is ambiguous is a question of law, but the interpretation of an ambiguous plan provision is a question of fact. *Taylor*, 933 F.2d at 1232 ( citing *First Jersey Nat'l Bank v. Dome Petroleum Ltd.*, 723 F.2d 335. 339 (3d Cir.1983)).

 When a court holds that an ERISA plan is ambiguous as a matter of law, it "may consider the intent of the plan's sponsor, the reasonable understanding of the beneficiaries, and the past practices among other things." *Alexander*, 967 F.2d at 96. Although other circuits have determined that it is appropriate to construe any ambiguities against the drafter in resolving ambiguities in ERISA plans (*see Hughes v. Boston Mutual Life Ins. Co.*, 26 F.3d 264, 268 (1st Cir.1994): *Lee v. Blue Cross/Blue Shield of Alabama*, 10 F.3d 1547, 1551 (11th Cir.1994); *Glocker v. W.R. Grace & Co.*, 974 F.2d 540, 544 (4th Cir.1992); *Kunin v. Benefit Trust Life Ins. Co.*, 910 F.2d 534, 541 (9th Cir.).

*cert. den.* 498 U.S. 1013, 111 S.Ct. 581, 112 L.Ed.2d 587 (1990)), the Third Circuit has yet to adopt explicitly this rule of construction. In *Taylor*, an employee brought suit against his employer seeking severance benefits and urged the court to adopt a rule that construed ambiguous terms of a benefits plan against the drafter of the plan. *Id.* at 1233. The Third Circuit, however, directed that "when interpreting an ERISA severance plan, a district court should attempt to determine its intended meaning without construing it in favor of any party. Only if this factual inquiry proves fruitless should a court resort to constructions in favor of one party or another." *Id.* The court further noted that "rules of construction such as the principle that in certain circumstances a contract may be construed adversely to the party that drafted it are principles of last resort" and therefore, declined to "adopt a rule that would construe ambiguities against the drafter without first attempting to ascertain the intent of the parties." *Id.* at 1233–34. Accordingly, if this Court agrees with plaintiff that the terms of the plan are ambiguous it may not simply grant summary judgment on this ground and adopt an interpretation adverse to Great–West, a question of material fact will remain for trial.

Plaintiff advances several arguments to support her claim that defendant breached its contract by denying her payment of benefits. First, she asserts that Gould's life insurance did not terminate before his death because he was unable to work due to illness. She argues that the SPD unambiguously, establishes that long term disability benefits are only paid to persons covered under the plan and who are unable to work because of disability. She notes that in order to receive long term disability benefits, an employee must be absent from work for at least 180 consecutive days and that under the heading "Plan Eligibility, Termination and Reinstatement." the SPD provides that recipients of long term disability benefits maintain coverage as long as "premiums continue to be paid." Since it is undisputed that U.S. Liability continued to timely pay Gould's insurance premiums, she argues that Great–West cannot credibly argue that Gould's coverage

terminated while he was receiving long term disability benefits.

■ Next, plaintiff claims that the SPD's provisions governing termination of coverage are ambiguous with respect to when coverage terminates for employees who are totally disabled due to illness. She also alleges that these provisions conflict with language found under the heading "Disability Waiver of Premium Benefit." Specifically, she references language in the latter provision which provides that if an employee should die during the nine months of total disability which precede eligibility for this waiver of premium benefit "the Death Benefit will be payable under either a group policy or the Individual Policy and the language regarding termination of service." According to plaintiff, this language suggests that an employee who is totally disabled retains life insurance coverage. Finally, she notes that the plan does not indicate that employees who become totally disabled after age sixty are not entitled to life insurance benefits.

Defendant argues that plaintiffs contentions are meritless because the plan's language unambiguously provides that if an employee's service terminates due to illness, insurance coverage terminates 90 days after the employee last reported for work.

As an initial matter, this Court determines that plaintiff misreads the SPD's provisions *governing* long term disability benefits. The language under the heading "Plan Eligibility, Termination and Reinstatement" that plaintiff claims provides that recipients of long term disability benefits maintain life insurance coverage is plainly limited to long term disability insurance coverage. Similarly, the SPD's provisions governing termination of coverage due to illness are also unambiguous. When an employee is out of work due to illness, coverage for other than long term disability benefits ends 90 days after the employee's service is terminated. In the "Definitions" section of the plan, "service" is clearly defined as employment with an employer on an active full-time and full-pay basis for at least twenty-eight hours a week. However, the Court does find that plaintiff has sufficiently demonstrated that these provisions conflict with language found in the Disability Waiver provision and that this conflict renders the plan ambiguous.

■ According to the termination provision, insurance coverage for an employee who leaves work due to illness terminates 90 days after the employee last reports to work. In contrast, under the heading "Disability Waiver of Premium Benefit," the plan states that "the death benefit will be payable under either a group policy or the Individual policy" if the employee dies during the nine months of total disability which is one of the prerequisites for eligibility for the waiver benefit. If a 90–day absence from work triggers termination of life insurance benefits as Great–West contends, then no life insurance benefits would be available to beneficiaries of employees who die during this nine-month period. Because the nine months period is a prerequisite for this particular benefit, Great–West cannot claim that this language applies only to employees eligible for the disability waiver of premium benefit. These conflicting provisions render the plan ambiguous and the resulting question of fact precludes a grant of summary judgment for either party. Accordingly, plaintiffs breach of contract claim survives defendant's motion.

2. Equitable Estoppel Claim

■ The Third Circuit has established that an ERISA beneficiary may recover benefits under an equitable estoppel theory. *See In re Unisys Corp. Retiree Medical Benefit ERISA Litigation,* 58 F.3d 896 (3d Cir.1995). *cert. denied sub nom. Unisys Corp. v. Pickering,* — U.S. —, 116 S.Ct. 1316, 134 L.Ed.2d 470 (1996): *Curcio v. John Hancock Mut. Life Ins. Co.,* 33 F.3d 226, 235 (3d Cir.1994). To recover benefits under such a theory, an ERISA beneficiary, must establish: (I) material misrepresentation. (2) reasonable and detrimental reliance upon that representation; and (3) extraordinary circumstances. *Id; Smith v. Hartford Ins. Group,* 6 F.3d 131, 137 (3d Cir.1993). The determination of an equitable estoppel claim is a mixed question of law and fact. *Curcio,* 33 F.3d at 236.

■ Here, the parties dispute the facts. In her complaint, plaintiff contends that

Great–West should be estopped from denying her payment of benefits because it paid life insurance claims to beneficiaries of similarly situated employees. Specifically, she notes that defendant paid claims to the beneficiaries of Evelyn Epright and James Saunders. In her written submissions, however, plaintiff offers no evidence to support her contention that Great–West paid these claims and only vaguely asserts that Great–West has previously paid claims on two similarly situated individuals. In addition, she now claims that Great–West accepted the premium payments with full knowledge of her husband's disability, age and employment status because it was paying him long term disability benefits. Great–West's failure to inform him that he was no longer eligible for life insurance benefits, she asserts, prevented him from converting his life insurance coverage from a "group" to "individual" policy, a change that ostensibly would have allowed him to maintain some level of life insurance coverage.

Defendant urges the Court to dismiss plaintiffs equitable estoppel claim on the ground that she has failed to adequately plead all the elements necessary to support her claim. It notes that plaintiffs complaint merely alleges that Great–West paid claims on similarly situated U.S. Liability employees. Furthermore, it argues that if any claims were actually paid on similarly situated employees then they were made in error and it is therefore under no obligation to make the same mistake again. Finally, it stresses that U.S. Liability made and it accepted premium payments on behalf of Gould in error and cannot be required to pay the claim on this basis alone.

Upon review, the Court finds that plaintiff's claim for relief is inadequate to withstand an adverse summary judgment. Assuming that Great–West's alleged payment of claims on similarly situated employees rises to the level of material misrepresentation, plaintiff does not allege in her complaint that Gould relied to his detriment on Great–West's alleged payments to similarly situated employees. Because plaintiffs other equitable estoppel claims are not referenced in her complaint, the Court declines to address them on the ground that they are not properly before the Court. Accordingly, plaintiffs equitable estoppel claim is dismissed.

## CONCLUSION

For the reasons stated, defendant's motion to dismiss plaintiffs breach of contract claim is denied and its motion to dismiss plaintiffs equitable estoppel claim is granted. Plaintiffs cross-motion for summary judgment is denied.